**UNITED STATES, Appellee,**

v.

**Buddy D. WARD, Jr., Sergeant, U. S. Air Force, Appellant.**

**No. 29,456.**

U. S. Court of Military Appeals.

Oct. 3, 1975.

---

*Captain Bruce R. Houston* argued the cause for Appellant, Accused. With him on the brief was *Colonel William E. Cordingly.*

*Captain Alvin E. Schlechter* argued the cause for Appellee, United States. With him on the brief was *Colonel C. F. Bennett.*

## OPINION OF THE COURT

FERGUSON, Senior Judge:

Contrary to his pleas the accused was convicted by a special court-martial of three specifications of larceny, four specifications of housebreaking, unlawful entry, and communication of a threat, in violation of Articles 121, 130, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 921, 930, and 934. We granted review on the following issues:

I. WHETHER THE AIR FORCE COURT OF MILITARY REVIEW CORRECTLY CONCLUDED THE ACCUSED WAS NOT PREJUDICED BY THE ADMISSION INTO EVIDENCE OF ITEMS OBTAINED FROM AN ILLEGAL SEARCH AND SEIZURE.

II. WHETHER THE CONVENING AUTHORITY AND SUPERVISORY AUTHORITY WERE DISQUALIFIED BY REASON OF THE TESTIMONY OF A GOVERNMENT WITNESS THAT THE STAFF JUDGE ADVOCATE OF THE CONVENING AUTHORITY WOULD RECOMMEND ACTION UNDER ARTICLE 15, UNIFORM CODE OF MILITARY JUSTICE, IN EXCHANGE FOR HIS TESTIMONY.

III. WHETHER THE POST–TRIAL REVIEW IS INADEQUATE IN FAILING TO DISCUSS THE TESTIMONY OF THIS GOVERNMENT WITNESS.

For the reasons discussed below, we find that as to each of the granted issues appel-

lant has been aggrieved, and, accordingly, we reverse.

## I

In order to sustain its burden of proving beyond a reasonable doubt the appellant's guilt of specification 5 of Charge I (unlawfully entering the storeroom area of Hangar 520 with intent to commit larceny) and of specification 4 of Charge II (larceny of tools from that same locale), the prosecution offered into evidence during an Article 39(a) session a box of tools seized from the appellant's car pursuant to a search authorized by the deputy group commander. After an extended inquiry into the circumstances surrounding the search, and over defense objection, these tools were admitted into evidence as Prosecution Exhibit 3.

During the presentation of its case in chief concerning these two offenses, the prosecution called three witnesses, all of whom were asked to examine Prosecution Exhibit 3. Special Agent Stephen Lucasik of the OSI, in testifying before the court members, identified the exhibit as the tools he seized from appellant's car during the search. Additionally, he testified that a Sergeant Rad had identified them as belonging to the latter's organization.

Sergeant William DuBose, an OSI informant and the Government's key witness, testified that on the date in question appellant told him and Airman Evans that he wanted to get some tools. Thereafter, all went to Hangar 520 and went inside. By use of a knife, appellant opened the door to an office inside the hangar and entered alone. A short time later, appellant reappeared carrying a bag of tools. After all three had returned to the vehicle, the appellant noticed that the tools were marked, whereupon DuBose observed the mark "A110" thereon. DuBose, after examining the tools marked Prosecution Exhibit 3, noted that they were marked "A110" and opined that they looked like the tools carried by appellant from the office in Hangar 520.

Finally, Staff Sergeant Stefan Rad, the noncommissioned officer in charge of the Nonpowered AGE Section, testified that the tools belonging to his section were assigned the code number "A110." He revealed that on or about the date in question some tools which were kept in a cabinet in his office in Hangar 520 turned up missing, but that he had never reported their loss except to the person in charge of the tool room in order to get replacements. Staff Sergeant Rad examined Prosecution Exhibit 3 and said that he could identify those marked "A110" as belonging to his unit and that his identification was based on that marking.

Additionally, the stipulation of expected testimony of Technical Sergeant John McCafferty, the noncommissioned officer in charge of Organization Maintenance Squadron Supply, indicated that Staff Sergeant Rad was the only one assigned the code "A110" for his tools; that in December (shortly after the alleged offenses occurred) Rad had come to him reporting the loss of some tools; and that when their loss was reconfirmed in January more tools were issued Rad, again bearing his code number "A110."

The Air Force Court of Military Review held that the admission of the tools into evidence was erroneous as they were the product of an illegal search.[1] However, after discussing the remaining prosecution evidence and observing that it constituted the proof necessary to show that appellant did steal the tools, that tribunal opined that the admission of the tools into evidence which had been seized contrary to the protections afforded appellant by the Fourth Amendment to the United States Constitution "had no significant impact on the balance of the admissible evidence establishing the guilt of the accused" and, thus, was error nonprejudicial to appellant. We disagree.

Article 59(a), UCMJ, 10 U.S.C. § 859(a), instructs:

1. Citing *United States v. Lidle*, 21 U.S.C.M.A. 455, 45 C.M.R. 229 (1972), the court ruled that the search of appellant's car was authorized without an adequate showing of probable cause.

A finding or sentence of a court-martial may not be held incorrect on the ground of an error of law unless the error materially prejudices the substantial rights of the accused.

This Court has had occasion in the past to determine the prejudicial effects of admission at trial of tangible evidence obtained in violation of an accused's constitutional rights. The phraseology used by us in that process varied among the cases.[2] Appellant has suggested to this Court that the tests enunciated by the arguably imprecise language varied as well; the Government on the other hand, has submitted that despite the differing terminology used, all essentially apply the harmless-error test of the United States Supreme Court. Whatever may be the merit to these contentions, it is clear to us that the appropriate test to be applied to determine whether admission of evidence against an accused obtained in violation of his constitutionally protected rights was harmless[3] is that set forth by the High Court in *Fahy v. Connecticut*, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963), as clarified in *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

In *Fahy v. Connecticut, supra*, the Supreme Court, in addressing the admission of evidence obtained through an illegal search, noted:[4]

We are not concerned here with whether there was sufficient evidence on which the petitioner could have been convicted without the evidence complained of. The question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction.[5]

Subsequently, in *Chapman v. California, supra*, that Court clarified its test:[6]

There is little, if any, difference between our statement in *Fahy v. Connecticut* about "whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction" and requiring the beneficiary of a consti-

2. In *United States v. Justice*, 13 U.S.C.M.A. 31, 36, 32 C.M.R. 31, 36 (1962), we held that in view of the other evidence of record, "there is no room to suppose the court-martial drew support for its findings" from the illegally seized evidence, and we went on to say, "With more than 'fair assurance,' therefore, we conclude the search evidence did not influence the court-martial in its deliberations on the accused's guilt or innocence." We opined in *United States v. Smith*, 13 U.S.C.M.A. 553, 564, 33 C.M.R. 85, 96 (1963), that the admission of the challenged evidence "was not a substantial factor in the accused's conviction," while in *United States v. Simpson*, 15 U.S.C.M.A. 18, 22, 34 C.M.R. 464, 468 (1964), we used the term "no fair risk of prejudice" in evaluating the effect of the inadmissible evidence. In citing both *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), and *United States v. Simpson, supra*, we ruled in *United States v. Bonavita*, 21 U.S.C.M.A. 407, 409, 45 C.M.R. 181, 183 (1972): "The other evidence of guilt is so compelling that we are convinced there is no reasonable possibility that the decal influenced the court members in their verdict." However, in *United States v. Walters*, 22 U.S.C. M.A. 516, 519, 48 C.M.R. 1, 4 (1973), we used the same "no fair risk of prejudice" phrase found in *United States v. Simpson, supra*.

3. An instance, as the present case, wherein the evidence complained of was obtained solely in contravention of protections afforded by the United States Constitution is to be distinguished from one in which the subject evidence also was the result of a violation of statutory provisions where the legal consequence afforded a military accused is more beneficial than that offered by the Constitution. In the latter instance, the test to be applied and the remedy tendered may be more beneficial to the accused than otherwise available under standards enunciated by the United States Supreme Court. *United States v. Kaiser*, 19 U.S.C.M.A. 104, 41 C.M.R. 104 (1969). *See United States v. Hall*, 23 U.S.C.M.A. 549, 50 C.M.R. 720, 1 M.J. 162 (1975), involving nonapplication of the Supreme Court's harmless-error rule of *Milton v. Wainwright*, 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972), to a case wherein the statement of the accused admitted into evidence against him was the fruit of a violation not only to the Fifth Amendment, but also of Article 31, UCMJ, 10 U.S.C. § 831.

4. *Fahy v. Connecticut*, 375 U.S. 85, 86–87, 84 S.Ct. 229, 230, 11 L.Ed.2d 171 (1963).

5. In finding such "reasonable possibility," the Court observed that the evidence was *itself* incriminating and, *additionally*, it corroborated a witness placing the accused at the scene of the crime and placing the evidence in the accused's car.

6. *Chapman v. California, supra* at 24, 87 S.Ct. at 828.

tutional error to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained. We, therefore, do no more than adhere to the meaning of our *Fahy* case when we hold, as we now do, that before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt.[7]

The rationale for the Court's ruling appears earlier in the decision:[8]

We are urged by petitioners to hold that all federal constitutional errors, regardless of the facts and circumstances, must always be deemed harmful. . . We decline to adopt any such rule. All 50 States have harmless-error statutes or rules, and the United States long ago through its Congress established for its courts the rule that judgments shall not be reversed for "errors or defects which do not affect the substantial rights of the parties." 28 U.S.C. § 2111.[9] None of these rules on its face distinguishes between federal constitutional errors and errors of state law or federal statutes and rules. All of these rules, state or federal, serve a very useful purpose insofar as they block setting aside convictions for small errors or defects that have little, if any, likelihood of having changed the result of the trial. We conclude that there may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Consti-

tution, be deemed harmless, not requiring the automatic reversal of the conviction.

■ Based upon the same reasoning, we, too, now so hold that before an error founded solely upon the federal constitution can be held harmless under Article 59(a), the court must be able to declare a belief that it was harmless beyond a reasonable doubt.[10] *See Chapman v. California, supra.*

■ When an appellate court applies this standard, consideration must be given to such factors as the purpose for which the evidence was introduced and the use to which it was put. In the case at bar, we cannot say that the error in admitting the tools seized from appellant's car during a search violative of his rights protected by the Fourth Amendment was harmless beyond a reasonable doubt. Without the tools themselves, the remaining evidence consisted of testimony indicating that some tools marked "A110" were found missing from an office in Hangar 520 about the date in question and Sergeant DuBose's testimony concerning the incident itself.[11] The case against appellant as to both of these offenses, then, rests squarely upon the credibility of DuBose's testimony. If believed, then the evidence independent of the tainted tools appears sufficient to have supported a finding of guilty, but as *Fahy v. Connecticut, supra,* 375 U.S. at 86, 84 S.Ct. at 230, teaches, the concern is not with "whether there was sufficient evidence on which the petitioner could have been convicted without the evidence complained of."

7. Since its decision in *Chapman*, the Supreme Court consistently has adhered to and applied this "beyond a reasonable doubt" test in determining presence of harmless error. *Brown v. United States,* 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973); *Milton v. Wainwright,* 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972); *Schneble v. Florida,* 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972); *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *Harrington v. California,* 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969). *See Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).

8. *Chapman v. California, supra* at 21–22, 87 S.Ct. at 827 (citation omitted).

9. Note the substantial similarity in the quoted language from 28 U.S.C. § 2111, and that found in Article 59(a), UCMJ, quoted earlier in this decision. *See* Fed.R.Crim.P. 52(a): "Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded."

10. Of course, as in all instances in a criminal case in which a conclusion adverse to an accused must be beyond a reasonable doubt, it is the Government which has the burden of proof in meeting that standard. *See Chapman v. California, supra; Fahy v. Connecticut, supra.*

11. *See Whiteley v. Warden, Wyoming State Penitentiary,* 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971).

There appears at least a reasonable possibility that the physical evidence of the tools themselves lent immediate credibility to the testimony of DuBose.[12] As the Supreme Court observed in *Fahy*, the tools not only were incriminating in themselves, being distinctively marked and being found as they were in appellant's own automobile, but also they corroborated the testimony of DuBose concerning appellant's perpetration of the offenses. As such, when we ask ourselves "whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction," we are constrained to reply in the affirmative.

The fate suffered the conviction for larceny resulting from this error also must befall that for housebreaking into Hangar 520. A necessary element of the charged housebreaking offense is that the entering must have been with the intent to commit a criminal offense therein [13]—in the instant case, the larceny of the tools. Since all that we have said concerning the possible prejudicial effect of the tools on the larceny charge equally applies to this element of the housebreaking offense, the tools must be said to have contributed to the conviction for the latter offense, also. Hence, it too must fall.

## II and III

Airman First Class Evans was called as an important prosecution witness, whose testimony related to most of the offenses involved in the case at bar. Upon cross-examination, the witness stated that the staff judge advocate to the convening authority had told him that a recommendation for clemency in the form of punishment under Article 15 would be made in exchange for his testimony against appellant at the latter's trial. This statement stands unrebutted on the record, but for some reason unexplained, it was not noted in the post-trial review submitted to the supervisory authority by his staff judge advocate.

■ Evans was not a minor government witness. As an admitted accomplice of appellant in most of the charged offenses, his testimony was critical both in itself and as support for that of other prosecution witnesses. Therefore, his credibility as an accomplice/witness was of great import and for this reason it was prejudicial error for the post-trial review to have omitted completely any reference to the clemency matter to which Evans addressed himself during cross-examination. *United States v. Nelson*, 23 U.S.C.M.A. 258, 49 C.M.R. 433 (1975). *See United States v. Sierra-Albino*, 23 U.S.C.M.A. 63, 48 C.M.R. 534 (1974). Hence, we find the review fatally deficient.

■ However, had the post-trial review properly included this subject matter, it is clear that both the supervisory authority and the convening authority would have been disqualified from reviewing the record of appellant's court-martial for the knowledge of a promise of clemency to a prosecution witness by a subordinate renders such authorities disqualified from so acting. *United States v. Espiet-Betancourt*, 23 U.S.C.M.A. 533, 50 C.M.R. 672, 1 M.J. 91 (1975); *United States v. Chavez-Rey*, 23 U.S.C.M.A. 412, 50 C.M.R. 294, 1 M.J. 34 (1975); *United States v. Cruz*, 23 U.S. C.M.A. 238, 49 C.M.R. 291 (1974); *United States v. Sierra-Albino, supra; United States v. Dickerson*, 22 U.S.C.M.A. 489, 47 C.M.R. 790 (1973). We perceive no distinction between an outright agreement for clemency entered into by a subordinate, and a promise of a recommendation for clemency by that subordinate. In either case, the witness obtains a substantial benefit from his testimony and the subordinate has demonstrated a pretrial judgment as to the credibility of the witness, which judgment the convening authority and the supervisory authority may be hesitant to discard. Corrective action is dictated.

The decision of the U. S. Air Force Court of Military Review is reversed. The actions of the convening authority and the supervi-

---

12. *See Stoner v. California*, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964).

13. Article 130, UCMJ, 10 U.S.C. § 930; paragraph 209, Manual for Courts-Martial, United States, 1969 (Rev.).

sory authority are set aside. Additionally, the findings as to specification 5 of Charge I and as to specification 4 of Charge II are set aside.[14] A rehearing may be ordered. In the event a rehearing is deemed impracticable, the record will be assigned to different convening and supervisory authorities for action not inconsistent with this opinion.

Chief Judge FLETCHER and Judge COOK concur.

14. *See Stoner v. California, supra.*