UNITED STATES

v.

Sergeant Roberto BOWEN, FR 068–42–4917 Inter-American Air Forces Academy United States Air Forces Southern Command.

ACM 21999.

U. S. Air Force Court of Military Review.

Sentence Adjudged 20 Sept. 1975.

Decided 23 July 1976.

Appellate counsel for the Accused: Colonel Jerry E. Conner and Major Bruce R. Houston.

Appellate counsel for the United States: Colonel Julius C. Ullerich, Jr., and Captain Alvin E. Schlechter.

Before LeTARTE, C. J., EARLY, Senior Judge, and FORAY, J.

## DECISION

EARLY, Senior Judge:

Tried by general court-martial, the accused was convicted, despite his pleas, of assault with intent to commit voluntary manslaughter, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. He was sentenced to be confined at hard labor for 12 months, to forfeit $200.00 per month for six months, and to be reduced to the grade of E–2. The convening authority approved only a finding of guilty of intentionally inflicting grievous bodily harm in violation of Article 128, and reduced the sentence to confinement at hard labor for ten months, forfeiture of $100.00 per month for six months and reduction to E–2. On 1 April 1976, the Commander, Lowry Technical Training Center, suspended the confinement and forfeitures remaining until 30 September 1976 with provision for automatic remission.

This case has been forwarded for review pursuant to Articles 66 and 69, Code, supra, by The Judge Advocate General, who has specified two issues:

WAS THE ERRONEOUS ADMISSION INTO EVIDENCE OF PROSECUTION EXHIBITS 3, 4, 5, 9, 11 and 13 [1] HARMLESS BEYOND A REASONABLE DOUBT, cf. *UNITED STATES v. WARD*, 23 U.S.C.M.A. 572, 50 C.M.R. 837, 1 M.J. 176 (1975)?

WAS THE RULE OF *UNITED STATES v. GOODE*, 23 U.S.C.M.A. 367, 50 C.M.R. 1, 1 M.J. 3 (1975), VIOLATED BY SERVICE OF THE STAFF JUDGE ADVOCATE'S REVIEW ON DEFENSE COUNSEL SUBSEQUENT TO THE ACTION OF THE CONVENING AUTHORITY? IF SO, WHAT EFFECT DID THIS VIOLATION HAVE ON THE ACTION OF THE CONVENING AUTHORITY?

The facts of the case are summarized as follows. During the evening of 9 June 1975, during a marital spat, the accused shot his wife twice with a .25 calibre pistol while in their automobile then parked on a side road near the Navy Tank Farm in the Canal Zone. Both spouses agreed to tell a story that Mrs. Bowen had been shot by persons unknown during an attempted sexual assault near their home in the Republic of Panama. At the hospital this story was told by both, with the result that the accused was taken to the Panamanian equivalent of the Federal Bureau of Investigations (DENI). Investigators of the DENI, the Air Force Office of Special Investigations, military police and the accused went to the place where accused said the alleged sexual assault occurred. The on-the-scene investigation revealed nothing, and interviews of witnesses in the area were likewise unproductive. Accordingly, the investigators began to believe that the accused was not telling them the "full truth." The representative of the DENI then decided to hold the accused at DENI headquarters for further questioning.

The following morning, the military police liaison officer came to DENI headquarters and saw the accused. As he walked up, the accused said, "Hey, this thing didn't happen in the Republic of Panama." At that point the military policeman considered the accused a suspect. In spite of this, he questioned him as to "what happened" without first advising him of his rights under Article 31. The military policeman stated that he did not have time for any rights advisement since his main consideration was to secure the custody of the accused from the Panamanians. He did, however, inform the OSI Commander and the Air Force Security Policeman.

Subsequently, the accused was released and taken to the office of the Canal Zone Police, an agency of the United States Government, where he was interrogated by Detective Benninghoff. Prior to conducting the interview, Detective Benninghoff advised the accused of his rights under the Fifth Amendment of the United States Constitution and of his right to counsel. At that time the accused requested counsel; however, the interrogation continued. Also present at the questioning were two OSI agents who took part in the interrogation since it was considered a "joint Canal Zone and OSI investigation from the beginning of that interview."

During this phase of the questioning, the accused admitted that he had shot his wife, and, at the request of Detective Benninghoff, offered to take the group to the scene. The subject of the accused's car was raised and Benninghoff requested consent to search the car. At that point Benninghoff said that the investigation would be turned over to the OSI, and the consent to search was put on an OSI form. The OSI agent then gave the accused a complete warning in accordance with Article 31, including the right to counsel.

Following an unsuccessful search of the area that day, the OSI and military police investigators returned the next morning and found the weapon used in the shooting. A spent cartridge was found in the accused's automobile.

---

1. At trial these exhibits were renumbered Prosecution Exhibits 1, 2, 3, 5, 6 and 7, respectively.

During this same time frame, OSI agents interviewed the victim and were told the story of the alleged sexual assault. However, upon hearing the accused's admissions to the military police liaison officer, they returned to the hospital and confronted the victim with the accused's account of the shooting. At that point the victim gave a "different story." She also gave permission to search the accused's car. Her story implicating the accused was mentioned to the accused during the questioning by Detective Benninghoff.

Upon timely objection of the defense, the military judge rejected all of the accused's admissions and confessions except his initial statement to the liaison officer about the place of the incident. However, he admitted into evidence the following prosecution exhibits:

No. 1(3) Titan .25 Calibre Pistol found at scene.

2(4) Picture of pistol at scene of shooting.

3(5) Air Force Form 1314, Firearms Registration, showing the Titan pistol registered to accused.

5(9) A spent bullet fired in the pistol for ballistics purposes.

6(11) Laboratory Report matching test bullet fired from Titan pistol with one taken from victim's body during surgery.

7(13) Sketch of area where the pistol was found.

At trial the victim exercised her spousal privilege not to testify against the accused.

█ In the review of the staff judge advocate, the reviewer determined that it was error to admit all of the above prosecution exhibits because they were obtained "by exploiting a confession which has been found to be inadmissible." We agree. See Manual for Courts-Martial 1969 (Rev.), paragraph 150*b; United States v. Collier*, (No. 29,915), 1 M.J. 358, 26 March (1976). However, he also found that this error "did not amount to so flagrant a violation of a fundamental right of the accused that he has not had a fair trial," and that "there

was competent evidence of record of such quantity and quality that a court of reasonable and conscientious men could have found the accused guilty of the lesser included offense of assault with intent to inflict grievous bodily harm." We disagree.

In *United States v. Ward*, 23 U.S.C.M.A. 572, 50 C.M.R. 837, 1 M.J. 176 (1975), the Court of Military Appeals adopting the ruling of the United States Supreme Court in *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), held that "before an error founded solely upon the federal constitution can be held harmless under Article 59(a), the court must be able to declare a belief that it was harmless beyond a reasonable doubt." 23 U.S.C.M.A. at 576, 50 C.M.R. at 841, 1 M.J. at 180.

█ Eliminating the inadmissible evidence, all that remains is the testimony of the doctor establishing that the victim was shot; the testimony of the military police liaison officer as to the accused's statement that the incident had not occurred in the Republic of Panama; and the testimony of a Sergeant Crampton, a friend of the accused, that the accused told her that he had been "playing around" and shot his wife. Comparing this evidence against that improperly admitted, we are of the opinion that admission of the latter evidence was not "harmless beyond a reasonable doubt." *United States v. Ward*, supra.

With respect to the second specified issue, in *United States v. Goode*, 23 U.S.C.M.A. 367, 50 C.M.R. 1, 1 M.J. 3 (1975), the Court of Military Appeals ordered that a copy of the written post-trial review in a case be served on the accused's counsel with the opportunity, within five days under penalty of waiver, to correct or challenge any matter he might deem erroneous, inadequate or misleading or upon which he might otherwise wish to comment. Furthermore, the Court indicated that compliance with this requirement would not be sufficient cause to extend the 90-day period in cases subject to the rule established in *Dunlap v. Convening Authority*, 23 U.S.C.M.A. 135, 48 C.M.R. 751 (1974).

■ In the instant case, the convening authority promulgated his final action five days after the review was completed but more than two weeks prior to receiving defense counsel's *timely* challenge thereto.[2] Consequently, it is obvious that the *Goode* mandate was violated. For this reason, appellate defense counsel contend that the charges should be dismissed since compliance with *Goode* would have been impossible within the time period established in *Dunlap*, supra. We do not agree that dismissal of the charges is an appropriate remedy under the circumstances of this case.

However simplistic such a sanction might be, being easily applied and requiring no judicial discretion, we do not believe that the proper functioning of the judicial process is enhanced by the abnegation of judicial responsibility to such an arbitrary rule. In *United States v. Stockman*, No. 524299, 1 M.J. 757 (A.F.C.M.R. 11 Dec. 1975), we considered a situation where the convening authority's action was dated one day after the date of the staff judge advocate's post-trial review and the allied papers did not indicate proof of service of the review on, or waiver by, the defense counsel. We concluded that the appropriate corrective action would include returning the record for compliance with *Goode* and, if necessary, a new review and action.

Later, in *United States v. Veilleux*, No. 21937, 1 M.J. 811 (A.F.C.M.R. 26 Feb. 1976), pet. denied, 11 June 1976, faced with a situation similar to that now before us, we held that the failure to comply with the *Goode* requirement did not prejudice the accused in light of our finding that the review had been prepared in substantial compliance with paragraph 85, Manual for Courts-Martial, supra, and the defense counsel's comments were without merit.

■ The gist of these holdings is that we will examine the review in each instance where a *Goode* mandate violation is claimed to insure that the convening authority has been properly informed of the law and facts of the case, to determine whether the challenge submitted by defense counsel following the convening authority's action otherwise has merit, and, if warranted, to return the record of trial to the convening authority for appropriate corrective action.

In the case before us, the convening authority promulgated his action within 83 days after the accused was sentenced. As is readily apparent, had he delayed his action until after defense counsel's challenge to the post-trial review was received, a presumption would have arisen under *Dunlap v. Convening Authority*, supra, that the accused had been denied his right to speedy post-trial disposition of his case. Thus, the dilemma faced by the convening authority was whether to toll the running of the 90-day period established in *Dunlap* or to fail to comply with the *Goode* requirement. In our opinion, he wisely chose the latter course.

■ Once the convening authority has promulgated his final action, he may not thereafter withdraw it and substitute another therefor. *United States v. Hurlburt*, No. 524256, 1 M.J. 742 (A.F.C.M.R. 28 Nov. 1975), rev'd on other grounds, 1 M.J. 797, 27 Jan. 1976. Therefore, when compliance with the *Goode* mandate is impossible within the 90-day presumption period established in *Dunlap v. Convening Authority*, the convening authority should take his action and forward the record of trial for appellate review.[3] If, thereafter, the defense counsel submits a challenge to the review, it should be forwarded for inclusion in the allied papers.

Inasmuch as we have decided that a rehearing is required in this case, we need

---

2. Our determination that the response was timely is grounded upon the delays that resulted from mailing a copy of the review to the defense counsel at his permanent duty station, Maxwell Air Force Base, Alabama, and in returning his challenge by the same means to the convening authority in the Canal Zone.

3. When such action is taken, however, the staff judge advocate or convening authority should explain the reasons for the delays that prevented compliance with the *Goode* requirement.

not decide what effect, if any, the *Goode* violation had on the convening authority's action.

The findings of guilty and the sentence are incorrect in law and are hereby set aside. A rehearing is ordered.

LeTARTE, Chief Judge, and FORAY, Judge, concur.