UNITED STATES

v.

**Sergeant John C. WILLIAMSON, Jr., FR 447–52–5828, 3210th Supply Squadron Armament Development and Test Center (AFSC).**

**ACM S24412.**

U. S. Air Force Court of Military Review.

Sentence Adjudged 11 May 1976.

Decided 13 Oct. 1976.

Appellate Counsel for the Accused: Colonel Jerry E. Conner, Colonel Robert W. Norris and Captain David A. Bateman. Appellate Counsel for the United States: Colonel Julius C. Ullerich, Jr., and Major John A. Cutts III.

Before BUEHLER, Senior Judge, and HERMAN and ORSER, JJ.

## DECISION

ORSER, Judge:

Tried by a special court-martial with members, the accused stands convicted of two offenses of larceny and one each of absence without authority and operating a motor vehicle without a valid driver's license, in violation of Articles 121, 86, and 92, 10 U.S.C. §§ 921, 886, 892, respectively, Uniform Code of Military Justice. The approved sentence is a bad conduct discharge, confinement at hard labor for three months, and reduction to the grade of airman basic.

Though several errors have been assigned by appellate defense counsel and on the accused's behalf in his request for appellate representation, all but one are either without merit or were adequately considered by the staff judge advocate in his review and properly resolved adversely to the accused. In this decision, we need address only counsel's contention that:

> TESTIMONY OF A GOVERNMENT WITNESS, SOLICITED BY TRIAL COUNSEL, ALLUDED TO THE ACCUSED'S EXERCISE OF HIS RIGHT TO COUNSEL AND THEREBY CREATED REVERSIBLE ERROR.

In response to a question by trial counsel, an Air Force criminal investigator testified that following the accused's apprehension for suspicion of larceny, and after he was transported to the investigator's office and advised of his rights under Article 31, Code, *supra*, the accused asked to consult with counsel. The defense promptly moved that such testimony be stricken. The military judge sustained the motion and further instructed the court members to disregard the testimony as to the advisement of rights. The matter was never thereafter mentioned to the members of the court by any of the participants. The only other reference to it was by counsel for the accused who, during an Article 39(a) session out of the hearing of the members, unsuccessfully moved for a mistrial. At that same session, the defense specifically requested that the military judge not give the court members further cautionary instructions on the theory that to do so would only unduly emphasize the error. The judge acceded to the request.

On the authority of *United States v. Moore*, 24 U.S.C.M.A. 217, 51 C.M.R. 514, 1 M.J. 390 (1976), and the numerous cases cited therein, it was error to permit the investigator to notify the triers of fact that the accused, upon being questioned prior to trial, asserted his right to counsel. Such error is of Constitutional magnitude and mandates reversal of the accused's conviction as to all affected offenses unless we are convinced by the record that it was harmless beyond a reasonable doubt. *Id.*; *United States v. Ward*, 23 U.S.C.M.A. 572, 50 C.M.R. 837, 1 M.J. 176 (1975). To paraphrase the language of *United States v. Moore, supra*, 1 M.J. at 392, this error compels reversal even in the absence of specific prejudice; the error is harmful un-

less the evidence supports the conclusion that there is no reasonable possibility it might have contributed to the conviction.

The improper reference to the accused's request for counsel relates only to the two larceny offenses. The principal proof presented by the Government as to these offenses consisted of the testimony of two of the accused's co-workers in the base supply warehouse, Airmen Smith and Fears. Their testimony established that the accused was the instigator of a scheme to steal Government tools and toolboxes, sell the property and divide the proceeds.

Pursuant to the plan, Smith, on two separate occasions, supplied tool-laden boxes to Fears, who in turn transferred them to the accused as he motored through the warehouse on what the witnesses termed a supply train. Fears testified that within a couple of weeks after the first transaction the accused told him he had sold the property and gave him the sum of twenty-five dollars. Fears divided the money with Smith.

Though Air Force criminal investigators were aware from the outset of the planned thefts and had the area under surveillance, for some unaccountable reason they failed to detect any aspect of the first larceny. They were much more successful the second time, however. On that occasion, the agents observed the accused drive the supply train into the warehouse and proceed to the tool crib area where Fears awaited. There, they saw Fears provide a Government toolbox to the accused who placed it on his supply train and drove out of the warehouse. At that time, the agents placed him under apprehension, advised him of his rights under Article 31, Code, *supra,* and seized the toolbox and contents. He was then transported to the agents' office and again advised of his rights. It was while one of the agents was testifying to these events that he gratuitously mentioned that the accused had asked to consult with an attorney.

In addition to the foregoing, the toolbox and tools seized from the accused were properly identified and admitted into evidence. Evidence was also adduced respecting the value of the property and that the possession thereof by the accused, even though he worked in the warehouse, was contrary to prescribed supply procedures. The defense presented no evidence on the merits as to either of the charged larceny offenses.

In his direct testimony, Airman Smith gave no indication he was other than culpably involved with Fears and the accused in the larcenies. However, from his responses during cross-examination, we glean a clear indication that from the beginning he merely feigned such participation. And, while deluding Fears and the accused, he was at the same time actively cooperating with Air Force criminal investigators in an effort to bring Fears to justice. The Government agents who testified were not asked whether Smith was an informant. In their testimony they merely indicated they knew about the planned larcenies on the basis of information furnished by a confidential source. Neither the Government nor the defense further developed the matter at trial.

In his findings instructions to the court members, the military judge classified both Fears and Smith as accomplices as a matter of law and provided appropriate additional guidance respecting the special criteria for weighing and evaluating such testimony. See Manual for Courts-Martial, 1969 (Rev.), paragraph 153*a.* In fairness to the accused, in our independent evaluation of the evidence we have likewise treated both Fears and Smith as accomplices. Inasmuch as the Government's proof as to the initial larceny consisted solely of the testimony of the two witnesses, and recognizing that the testimony of one accomplice cannot be used to corroborate that of another,* we have considered such testimony uncorroborated. And, we have consequently employed the rule that such testimony cannot support a

---

* *United States v. Thompson,* 44 C.M.R. 732 (N.C.M.R.1971).

conviction if it is self-contradictory, uncertain, or improbable. Manual for Courts-Martial, *supra*, paragraph 153a; see *United States v. Diaz*, 22 U.S.C.M.A. 52, 46 C.M.R. 52 (1972).

■ Upon careful consideration of the testimony of the two witnesses, we find no indication of self-contradiction, uncertainty, or improbability. To be sure, there are certain discrepancies between the two. For example, in testifying about the second larceny, Fears said he asked Smith for a small toolbox; conversely, Smith stated Fears wanted a larger one the second time. Fears also stated Smith changed the time of the second larceny. Conversely, Smith testified he had no involvement in the timing of either larceny. In the context of all the testimony, these differences impress us as relating to relatively insignificant matters. They clearly do not detract from the substantive overall harmony of the testimony. In our judgment, the witnesses' testimony compellingly establishes the accused's guilt as to the initial larceny offense, without the need for corroboration. *United States v. Diaz, supra.*

As to the subsequent larceny, the evidence of the accused's guilt is even more compelling. As seen, the testimony of witnesses Fears and Smith was directly and most impressively corroborated by that of the Air Force criminal investigating agents who apprehended the accused in actual possession of the property involved in the charge.

■ In these circumstances, we are convinced there is not the slightest rational possibility the improper reference to the accused's assertion of his right to counsel contributed in any manner to his conviction of the two larceny offenses. The reference was unsolicited and fleeting. It was neither repeated nor exploited. It was immediately expunged from the record and the court members admonished to disregard it. The credibility of the chief Government witnesses was in no manner seriously brought into question. We accordingly conclude that in this instance the error was

harmless beyond a reasonable doubt. *United States v. Moore, supra.*

For the reasons stated, the findings of guilty and the sentence are

AFFIRMED.

BUEHLER, Senior Judge, and HERMAN, Judge, concur.

**UNITED STATES**

v.