**UNITED STATES, Appellee,**

v.

**Arthur L. PRINGLE, Private, U. S. Army, Appellant.**

No. 32,181.

CM 433189.

United States Court of Military Appeals.

Aug. 22, 1977.

*Captain Michael P. La Haye* argued the cause for Appellant, Accused. With him on the brief were *Lieutenant Colonel John R. Thornock* and *Captain Lawrence E. Wzorek.*

*Captain Lee D. Schinasi* argued the cause for Appellee, United States. With him on the brief were *Colonel Thomas H. Davis, Lieutenant Colonel Donald W. Hansen, Major John T. Sherwood, Jr.,* and *Captain Nancy M. Giorno.*

Opinion of the Court

FLETCHER, Chief Judge:

We granted the petition in this case to consider the effect of the military judge's denial of defense motions for suppression of co-accused's statements, severance, and mistrial. Joint accused were found guilty of attempted robbery.[1] During the initial Article 39a session,[2] counsel moved for severance on the grounds, *inter alia*, that introduction of co-accused's statements would prejudice his client. The military judge, in denying the motion, noted excision of references to the appellant would be accomplished along with cautionary instructions. This redaction was accomplished with accused's name "whited out,"[3] and the statements thus modified were given to the

---

1. Article 80, Uniform Code of Military Justice, 10 U.S.C. § 880.

2. Article 39(a), UCMJ, 10 U.S.L.C. § 839(a).

3. Defense counsel objected and recommended that another name be substituted.

court members as prosecution exhibits over counsel's objection to the effectiveness of the technique. The military judge instructed the court members to consider the statements only in regard to the makers thereof.

Following the lead of the United States Supreme Court in *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), this Court assured itself in the case of *United States v. Gooding*, 18 U.S.C.M.A. 188, 39 C.M.R. 188 (1969), that a co-accused had sufficient opportunity to cross-examine the maker of an inculpatory statement implicating the accused. In the instant case, we turn to the examination of a redacted statement of two makers being tried jointly with the appellant who do not subject themselves to cross-examination. After focusing on examination of the statement as redacted and the attendant circumstances at trial, we conclude that, in this case, the jury would have been unable to limit the culpatory evidence strictly to the makers thereof.

In evaluating the legal standard that should be implemented in this case, we follow the lead proposed by the drafters of the American Bar Association's Minimum Standards for the Administration of Criminal Justice. The drafters, recognizing concern over the efficacy of the redactive process as expressed in *Bruton*, moved from a tentative standard of allowing redaction "only after all references to the moving defendant have been effectively deleted" to a standard requiring the confession as modified to "not prejudice the moving defendant." Set forth in pertinent part, the approved standard follows:

2.3 Severance of defendants.

(a) When a defendant moves for a severance because an out-of-court statement of a codefendant makes reference to him but is not admissible against him, the court should determine whether the prosecution intends to offer the statement in evidence at the trial. If so, the court should require the prosecuting attorney to elect one of the following courses:

(i) a joint trial at which the statement is not admitted into evidence;

(ii) a joint trial at which the statement is admitted into evidence only after all references to the moving defendant have been deleted, provided that, as deleted, the confession will not prejudice the moving defendant; or

(iii) severance of the moving defendant.

ABA Standards, Joinder and Severance § 2.3(a) (1968).

■■ We turn to the question of whether or not the military judge abused his discretion in failing to grant the appellant's motion for a severance. In the early case of *United States v. Evans*, 1 U.S.C.M.A. 541, 4 C.M.R. 133 (1952), we placed the burden on the movant for severance, requiring him to show risk of prejudice. This decision rested within the discretion of the trial judge. In *United States v. Borner*, 3 U.S.C.M.A. 306, 12 C.M.R. 62 (1953), the application of the *Evans* standard did not establish good cause for severance where limiting instructions for the jury were available. Examining *Evans* and *Borner*, in view of *Bruton*, we must now regard severance of a joint trial as contingent upon the government's capacity to redact a co-accused's statement in a manner which will not prejudice the moving defendant. This holding does not fly in the face of the federal case authorities[4] cited to us by the government in this case.[5] The military judge has full discretion, except he may not deny severance where improper redaction taken in context prejudices the moving defendant.

---

4. *Opper v. United States*, 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101 (1954); *United States v. Bastone*, 526 F.2d 971 (7th Cir. 1975); *United States v. Trudo*, 449 F.2d 649 (2nd Cir. 1971); *Posey v. United States*, 416 F.2d 545 (5th Cir. 1969), *cert denied*, 397 U.S. 946, 90 S.Ct. 964, 25 L.Ed.2d 127 (1970), reh. denied 397 U.S. 1031, 90 S.Ct. 1267, 25 L.Ed.2d 544 (1970).

5. While *United States v. Trudo, supra*, rejected the contention of contextual inculpation, it must be noted that, unlike the instant case, the statement made no reference to any other party.

In the present case were tried three co-accused; two of whom confessed in pre-trial statements implicating the accused. In the factual context of this case we consider the redacted confessions prejudicial to the accused. With three accused, speculation as to the identity of the redacted name is compulsively directed toward the appellant for mathematical reasons alone where, as here, the two confessions accompanied by a copy of the charges were physically given to the members and considered by them in their deliberations. Federal courts have avoided this particular problem by allowing substitution of phrases and by reading the confessions to the jury.[6]

In the course of the proceedings there occurred certain comments that emphasized the inculpatory nature of the statements of co-accused and by implication the inculpation of appellant. In a verbal error the military judge instructed the court that they were not to speculate from Henson's statement anything against the other two accused. Further, in instructing a witness testifying to the making of Henson's confession, the military judge announced that he was "not to mention the name of any other accused in this case." This instruction was given in the presence of the court members. On several occasions witnesses made reference to "other individuals" having made inculpatory statements regarding the appellant. These occurrences make it impossible for us to embrace the fiction that the redacted confessions of the co-accused did not in any way prejudice the accused. Inasmuch as these co-accused did not testify and subject themselves to cross-examination, the appellant was deprived of his Sixth Amendment right of confrontation.[7]

This Court has enunciated its test[8] for determination of the harmlessness of constitutional error:

[B]efore an error founded solely upon the federal constitution can be held harmless under Article 59(a), the court must be able to declare a belief that it was harmless beyond a reasonable doubt.

*United States v. Ward*, 23 U.S.C.M.A. 572, 576, 50 C.M.R. 837, 841, 1 M.J. 176, 180 (1975). It is the government's burden of proof to meet this standard. *Id.* Under these facts we do not perceive the government as having done so; thus, we cannot affirmatively declare it harmless. *United States v. Moore*, 24 U.S.C.M.A. 217, 51 C.M.R. 514, 1 M.J. 390 (1976); *United States v. Ward, supra.*

In the application of the *Bruton* rule to this case we do not seek to undercut the proper implementation of the joint proceedings. Joint trials serve to avoid delays, conserve public monies, and decrease discommodity to witnesses and officers of the court. But we must reject these economies if only purchasable at the cost of basic constitutional protections.

The decision of the United States Army Court of Military Review is reversed and the findings and sentence are set aside.

---

6. *See, e. g., United States v. Gay*, 522 F.2d 429 (6th Cir. 1975), where effective redaction included deletion of codefendant's name and substitution of the phrase "my friend" coupled with instructions to only consider the confession against the maker, and the jury was not permitted to see the document nor take it into deliberation room; *United States v. Dority*, 487 F.2d 846 (6th Cir. 1973), where substitution of "another party" was made for codefendants and confession was read to the jury; *United States v. Trudo, supra; United States v. Panepinto*, 430 F.2d 613 (3d Cir. 1970); *Posey v. United States, supra*, at 550, where names of 17 codefendants were deleted by use of 82 blanks and the confession then read to jury; and *Serio v. United States*, 131 U.S.App.D.C. 38, 401 F.2d 989 (1968), where phrase "another man" substituted with the confession read to the jury. The court found this ineffective and reversed.

7. The Sixth Amendment to the Constitution of the United States provides, in pertinent part, that:

In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.

8. In doing so, we adhere to the standard in *Fahy v. Connecticut*, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963), as clarified in *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), as reaffirmed by the majority in *Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969), and as followed in numerous progeny.

The record of trial is returned to the Judge Advocate General of the Army. A rehearing may be ordered.

Judge PERRY concurs.

COOK, Judge (dissenting):

I disagree with the majority, both as to the principles of law they propound and their conclusion.

As to the law, the ABA standard, adopted by the majority as rule, does not, *in my opinion,* take adequate account of the probability that the co-accused whose pretrial statement is admitted into evidence may testify on the merits. The majority inferentially admit that circumstance eliminates any possibility of prejudice from even an unredacted statement of the co-accused. *United States v. Gooding,* 18 U.S.C.M.A. 188, 39 C.M.R. 188 (1969). The substance of this view of the law was argued by trial

counsel, in opposition to the defense motion to sever, and was adopted by the trial judge. I agree with it. *See United States v. Walton,* 538 F.2d 1348, 1352 (8th Cir. 1976). Also, I do not believe it was error for the trial judge to instruct the court members, in the language of the majority opinion, "not to speculate from Henson's statement anything against the other two accused." [1] That instruction is appropriate, perhaps even essential, considering the limited purpose for which the evidence is admitted, and I see nothing wrong with it. *United States v. Gooding, supra; United States v. Walton, supra* at 1353 n. 5.

Other comments noted by the majority make it, they say, "impossible for . . . [them] to embrace the fiction that the redacted confessions of the co-accused" were not prejudicial. To me, those comments are totally innocuous,[2] and I cannot conceive

1. The text of the instruction is as follows: There are deletions, there are incisions, we would call them, in Prosecution Exhibit 6, and the court is not allowed to speculate from Prosecution Exhibit 6 anything against the other two accused in this case. It may only be used against Private Mark Henson.
   . . .

2. The full text of the colloquy in which the admonition to a witness [CID Agent Wilson] "not to use the name of any other person who might be the accused in this case" is as follows:
   MJ: Just a minute, there are three accused here, it is my intention that if this statement which he presumably gave, is received in evidence, that there will be no references made in that statement which may be given to the court, and received in evidence to any other persons. Now, with that in mind, I'm going to direct this witness not to use the name of any other person whom might be the accused in this case, in deciding what the accused Henson may have told you. It's going to be difficult, but you understand what I'm driving at. Defense counsel for Private Pringle?
   DC (1LT ROBERTSON): You said any other person that might, even if the other person is not the accused.
   MJ: No, I'm just merely directing the witness not to use the name of any other accused person in his recitation which he apparently is going to be permitted to make. So, you will have to omit the names of any other accused person other than Private Henson.
   WIT: Yes, sir.
   DC (CPT EISENBERG [counsel for Henson]): Yes, sir, I want to make that clear also.

Q. That question directed to you Mr. Wilson, is solely to illicit what Private Henson said concerning his own personal conduct and talking basically about the general thrust. Let me rephrase the question, did Mark Henson ever to say [sic], "I robbed Private Rich," or, "I robbed two individuals who were standing together on that evening." Did he use the word, "rob?"
A. No, sir, he did not say that he robbed two people.

As the majority's reference to " 'to other individuals' having made inculpatory statements regarding appellant," I have noted only one such incident, which, for two reasons, I do not regard as a basis for reversible error: (1) it occurred during cross-examination of Agent Dietrich by appellant's individual counsel; and (2) I construe the testimony as referring to the victims who made "allegations" against the accused, not to the statements of co-accused. *The examination is as follows:*
Q. Before you read paragraph on that paper, did you discuss the case at all with Private Pringle?
A. Yes, I did.
Q. What did you tell him at that time?
A. *I told him that several individuals had made allegations against him.*
Q. Did you say how many?
A. No, I don't remember whether I said that or how many I said. I just said there were individuals.
Q. *Did you tell him how many people were involved in the allegations?*
A. I don't remember, I don't recall that either.

them as polluting the minds of the court members. Additionally, I perceive no danger to the appellant merely from the fact that an excised confession of a co-accused was given to the court members. The apparent implication of footnote 5 is that the proper procedure is to read, but not to give, the co-accused's statement to the court members. In military practice, however, the court members are entitled to question a witness. It seems to me that right can be more effectively exercised if a copy of a written exhibit is before them.[3]

Turning to whether the admitted statement of the co-accused prejudiced the appellant, it must be noted that all accused were charged with two specifications of robbery and one specification of attempted robbery. The victims of the robbery were returning to their barracks, after having attended the theater on post, when they were accosted by three men. Neither victim could identify any of the three persons who confronted them. The court members found the appellant and his co-accused, Gee and Henson, not guilty of these robberies. However, all were convicted of the attempted robbery. Private First Class Tapia, the victim of that offense, identified the accused as one of the trio that assaulted him. The incident occurred "right between the Flamingo Club and the tennis court." He stated that he saw the accused's face for 25 to 30 seconds; he also described the accused's clothing and that of the others involved in the attempt. His description corresponded substantially with the description of the attire of the trio when they were apprehended by the military police shortly after the crime. Tapia immediately identified the accused when he next saw him, and he was allowed to testify, correctly I believe, *United States v. Quick,* 3 M.J. 70 (C.M.A.1977), to that identification, as well as to an in-court identification.

After the attempted robbery, Tapia pursued Gee. From the time of the attempt to the time of his apprehension behind the Flamingo Club, Gee was never out of Tapia's sight. Appellant was apprehended by the military police about a block and a half from the Flamingo Club. The apprehension was made on the basis of a broadcast description of the alleged robbers. Appellant

---

Q. Did you tell him how many people you had under suspect?
A. I don't recall that I did.

**3.** The difference in procedure was the subject of a specific instruction by the trial judge to emphasize to the court members that they were not to speculate as to the excisions in the statements of the co-accused. The material part of the instruction is as follows:

Now again, I advise the members of the court that the statement received in evidence, allegedly signed by Private Henson, may only be used against him. Further that the statement, allegedly signed by Private Gee, may only be used against him. And further that the alleged oral statement given by Private Pringle, may only be used against him, Private Pringle. Counsel have expressed before you . . . the concern that you will try to match up these statements and compare one against the other and that sort of thing. You are not to do so. You must disregard and put out of your mind any thought as to what name may appear or have appeared in the statements which have now been excised and deleted for your examination in the body of the statement, that's what I'm talking about.

. . . . .

Although the procedure we have followed here in permitting you to have the statements with excisions in them is an approved procedure, perhaps if I had determined and upon request might have had the trial counsel read the alleged pretrial statements by the two who made them and on paper, however, it is a normal practice that any documentary evidence be received by the fact finders for their consideration, that's what you're doing in this instance.

. . . . .

There is another, perhaps, peculiarity about military law and it's this. Namely, contrary to most civil jurisdictions, the members have historically in courts-martial been allowed to ask questions during the conduct of a trial by court-martial. . . . [A]nd we still have this practice, that the evidence was presented to you in order that you could look at it and determine whether you wish to ask questions of the witnesses who were called to testify. And that was another reason why I had in mind that it would be proper for you to examine those pretrial statements of Private Henson and Private Gee in order that you might, if you desired, ask questions of the witnesses who identified them and testify to you about how they were obtained and signed.

was brought in a police vehicle to the Flamingo Club, "where the paddy wagon was." As soon as the police vehicle arrived at the club, the appellant was identified by Tapia. Shortly thereafter, the accused elected to make an oral statement to a CID agent. In this statement, the accused admitted that he was "walking towards" the Flamingo Club with two others. When they were about 100 meters from the place of the attempted robbery of Tapia, the others "began to run." The appellant "did not know why," but he, too, began to run. He denied he attempted to rob anyone. The appellant's statement does not completely interlock with the statements of the co-accused, but it is concordant as to the time and place he and his companions were, and as to their running from the area. Concordance of this kind materially dilutes the prejudicial impact of the statements of the co-accused. *United States ex rel. Duff v. Zelker,* 452 F.2d 1009 (2d Cir. 1971), *cert. denied,* 406 U.S. 932, 92 S.Ct. 1807, 32 L.Ed.2d 134 (1971).

In *Harrington v. California,* 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969), the United States Supreme Court was confronted with the same question before us, specifically, whether the admission into evidence of separate confessions of two co-accused influenced the verdict against the third. The following excerpt from the Supreme Court's opinion is, in my view, equally applicable to this case.

It is argued that we must reverse if we can imagine a single juror whose mind might have been made up because of Cooper's and Bosby's confessions and who otherwise would have remained in doubt and unconvinced. We of course do not know the jurors who sat. Our judgment must be based on our own reading of the record and on what seems to us to have been the probable impact of the two confessions on the minds of an average jury. We admonished in *Chapman,* 386 U.S., at 23, 87 S.Ct. [824] at 827, against giving too much emphasis to "overwhelming evidence" of guilt, stating that constitutional errors affecting the substantial rights of the aggrieved party could not be considered to be harmless. By that test we cannot impute reversible weight to the two confessions.

We do not depart from *Chapman;* nor do we dilute it by inference. We reaffirm it. We do not suggest that, if evidence bearing on all the ingredients of the crime is tendered, the use of cumulative evidence, though tainted, is harmless error. Our decision is based on the evidence in this record. The case against Harrington was not woven from circumstantial evidence. It is so overwhelming that unless we say that no violation of *Bruton* can constitute harmless error we must leave this state conviction undisturbed.

*Id.* at 254, 89 S.Ct. at 1728. *See also United States v. Walton, supra* at 1353.

I would affirm the decision of the United States Army Court of Military Review.