UNITED STATES, Appellee,

v.

Glenn D. JOHNSON, Specialist Four, U. S. Army, Appellant.

No. 33,018.

CM 433394.

U. S. Court of Military Appeals.

Nov. 7, 1977.

*Captain John Richards Lee* argued the cause for Appellant, Accused. With him on the brief were *Colonel Robert B. Clarke, Lieutenant Colonel John R. Thornock,* and *Captain Leslie William Adams.*

*Captain Russell S. Estey* argued the cause for Appellee, United States. With him on the brief were *Colonel Thomas H. Davis, Major John T. Sherwood, Jr.,* and *Captain Lee D. Schinasi.*

Opinion of the Court

PER CURIAM:

■ There is no disagreement between the parties that at the appellant's trial by general court-martial,[1] Private King, who furnished the bulk of the Government's evidence linking the appellant to the crime, testified in exchange for a promise from trial counsel in these proceedings that counsel would testify favorably to King at the latter's subsequent sentence proceedings.[2]

---

1. For the offense of assault with intent to commit robbery, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934, the appellant was sentenced to a bad-conduct discharge, confinement at hard labor for 1 year, forfeiture of all pay and allowances, and reduction to the lowest enlisted grade. The convening authority reduced the period of confinement to 10 months, but otherwise approved the findings and the sentence as adjudged. The United States Army Court of Military Review affirmed in an unpublished opinion.

2. King had been convicted by a special court-martial of unrelated offenses, but the sentencing had been postponed at the behest of the defense and the Government to permit King to testify at the appellant's court-martial according to the agreement. That this agreement was a motivating factor in King's voluntary appearance is further supported both by the trial counsel's opening statement to the court

Thereafter, counsel did so testify, stating to King's sentencing court that without King's testimony, the appellant's conviction in the instant case would not have been possible.[3] Under these facts, we believe that the staff judge advocate was disqualified from writing the post-trial review;[4] as such, a new review and convening authority's action is required. *United States v. Ward*, 23 U.S.C. M.A. 572, 577, 50 C.M.R. 837, 842, 1 M.J. 176, 181 (1975), and case cited therein.

The Government here, as did the Court of Military Review below, seeks to distinguish *Ward* from the instant case on the ground of a perceived difference between a promise of a recommendation of clemency and a promise to testify before the witness' sentencing court in extenuation and mitigation. It is a difference which we do not grasp. As *Ward* makes clear, the rationale behind the line of cases leading to that decision is that the officials of concern are disqualified because the witness has obtained a substantial benefit from the promise and because the promise demonstrates a pretrial judgment by one of those officials' subordinates as to the credibility of the witness—a judgment which those officials may feel responsible to honor. This rationale applies with equal force under the facts herein.

The decision of the United States Army Court of Military Review is reversed. The action of the convening authority is set aside. A new review and action is authorized by a different convening authority and his staff judge advocate.

COOK, Judge (concurring in the result):

In *United States v. Morrison*, 3 M.J. 408 n. 1 (C.M.A.1977), I declared my disagreement with the view that the staff judge advocate's functions " ' include . . . [that] of being the chief prosecutor.' " I do not construe note 4 of the present opinion as rejection of my view of the matter, but as its reference to "the unitary function of a staff judge advocate's office" is susceptible of that construction, I am impelled to elaborate on my position.

Military "lawyers are for the most part, members of a single organization, and are, at all times, subject to assignment to different duties." *United States v. Hurt*, 9 U.S. C.M.A. 735, 754, 27 C.M.R. 3, 22 (1958). It is still true today, as it was at the time of the *Hurt* decision, that "[i]n one case a Judge Advocate General Corps officer may be appointed trial counsel; in another, he may appear as defense counsel." *Id.* In a general sense, every junior officer in a staff judge advocate's office is the subordinate of the staff judge advocate, but, in my opinion, this general relationship is superseded by the special relationship that arises in regard to a particular case when the junior officer is detailed as trial or defense counsel in a court-martial. In cases in which the junior assumes the office to which he has been detailed, it cannot, I believe, properly be said that there is a unity of function between him and the staff judge advocate. The Uniform Code of Military Justice requires that conclusion. *See United States v. Mallicote*, 13 U.S.C.M.A. 374, 377, 32 C.M.R. 374, 377 (1962); *United States v. Gunnels*, 8 U.S.C.M.A. 130, 23 C.M.R. 354 (1957). I agree, therefore, with former Chief Judge Quinn that trial counsel and the staff judge advocate cannot be treated as "members of a single entity, so that one member of the entity is chargeable with knowledge possessed by the other or with actions taken by him." *United States v. Sierra-Albino*, 23 U.S.C.M.A. 63, 65–66, 48 C.M.R. 534, 536–37 (1974).

("[King is] testifying for a deal, the best deal he can get"), and by King's own statement during direct examination ("I'm testifying today because I want to tell the truth, and I'm testifying on my own will because I have some charges brought against me, and to make it light on my sentence, I am testifying for the government's help.").

3. King received a sentence of no punishment.

4. In light of the unitary function of a staff judge advocate's office, action by the trial counsel will be imputed to the staff judge advocate absent evidence indicating that the staff judge advocate did not place his blessing thereon. *United States v. Sierra-Albino*, 23 U.S.C. M.A. 63, 65, 48 C.M.R. 534, 536 (1974); *see United States v. Diaz*, 22 U.S.C.M.A. 52, 46 C.M.R. 52 (1972).

In *Sierra-Albino,* a majority of the Court did impute to the staff judge advocate knowledge, and prior approval, of a clemency agreement with a Government witness. That imputation was based not merely on trial counsel's personal role in the matter, but on the express fact that the clemency agreement emanated from the "Fort Wood Legal Office," which was directed by the staff judge advocate. The significance of the latter circumstance is demonstrated by the following statement from the Court's opinion:

> Absent evidence, therefore, that the agreement . . . was negotiated *solely* by the prosecutor without the blessing of his superior legal officer, we believe that responsibility for the action should *in this case* be imputed to the staff judge advocate. [Emphasis added.]

Id. at 65, 48 C.M.R. at 536.

Here, I believe the evidence supports the conclusion that trial counsel was solely responsible for the agreement, and, therefore, the condition specified in *Sierra-Albino* is satisfied. At a minimum, the evidence would justify a limited hearing into that circumstance. However, to conserve judicial time and effort, I join in the disposition directed in the principal opinion.