## UNITED STATES

v.

Paul E. LECOLST, 012 42 1325, Hull
Technician Fireman Apprentice
(E–2), U. S. Navy.

NCM 77 1808.

U. S. Navy Court of Military Review.

Sentence Adjudged 27 June 1977.

Decided 15 Feb. 1978.

LT Philip G. Cohen, JAGC, USNR, Appellate Defense Counsel.

MAJ D. A. Higley, USMC, Appellate Government Counsel.

Before NEWTON, GLADIS and GRANGER, JJ.

GLADIS, Judge:

As this case reaches us, the accused stands convicted of eight unauthorized absences, totalling 95 days, and disorderly conduct. The sentence, as approved by prior reviewing authorities, consists of a bad conduct discharge and reduction to pay grade E–1.

The accused contends that introduction after findings of evidence of four prior shipboard nonjudicial punishments was prejudicial error. We disagree and affirm; holding that evidence of prior nonjudicial punishment imposed upon an individual attached to a vessel is admissible in aggravation, even though he has not been afforded the opportunity to consult with counsel or to demand trial by court-martial in lieu of such punishment.

The issue presented in this case is whether, in light of the principles announced in *United States v. Booker*, 3 M.J. 443 (C.M.A. 1977), evidence of prior shipboard nonjudicial punishment is admissible, as evidence of the character of the accused's prior service, to aggravate the penalty, within the parameters prescribed under MCM, 1969 (Rev.), para. 127c, for the offenses of which he stands convicted.

The accused bases his contention that he was prejudiced by receipt, after findings, of evidence of prior shipboard nonjudicial punishments upon the equal protection principles encompassed in the Due Process Clause of the Fifth Amendment, the reasoning of the Court of Military Appeals in *Booker*, and the intent of Congress.

Article 15, UCMJ, 10 U.S.C. § 815, which establishes nonjudicial punishment as an administrative method of dealing with minor offenses, provides that, except in the case of a service member attached to or embarked in a vessel, such punishment may

not be imposed upon a service member who has demanded trial by court-martial in lieu of nonjudicial punishment. Article 20, UCMJ, 10 U.S.C. § 820, provides that no person may be brought to trial before a summary court-martial if he objects.

In *Middendorf v. Henry*, 425 U.S. 25, 96 S.Ct. 1281, 47 L.Ed.2d 556 (1976), the Supreme Court held that the Congressional determination that counsel is not required in summary courts-martial violates neither the Sixth nor the Fifth Amendment to the U. S. Constitution, because a summary court-martial is not a criminal prosecution for purposes of the Sixth Amendment and, upon analysis of the interests of the individual and of the regime to which he is subject, the due process of law guaranteed by the Fifth Amendment does not embody a right to counsel at such a proceeding.

In *Booker*, the Court of Military Appeals held that, because the consequences of a decision to accept an Article 15 or a summary court-martial disciplinary action involve due process considerations (that is, waiver of a right to a full adversary criminal proceeding with its attendant Fifth and Sixth Amendment protections) and only a legally trained person can supply the requisite quantum of information necessary for an informed decision, an individual must be told of his right to confer with counsel before he opts for disposition at the Article 15 or summary court-martial level.

In *Middendorf*, the Supreme Court gave particular deference to the determination of Congress, made under its Constitutional authority to regulate the land and naval forces, that counsel should not be provided in summary courts-martial; noting that the framers of the Constitution especially entrusted to Congress the task of adjusting the precise balance between overriding demands of discipline and duty and the rights of men in the armed forces that must, perforce, be conditioned to meet those demands. We have no doubt that the Supreme Court would treat with equal deference the Congressional determination that a service member attached to or embarked in a vessel does not have the right to demand

trial by court-martial in lieu of nonjudicial punishment. No extraordinarily weighty factors militate in favor of upsetting the balance struck by Congress.

We do not doubt the authority of Congress to refuse to afford military personnel, members of a society in which the rights of individuals may be conditioned to meet overriding demands of discipline and duty, the right to demand trial by court-martial in lieu of action that is an administrative method of dealing with minor offenses. *See Middendorf v. Henry, supra.* See also *Parker v. Levy*, 417 U.S. 733, 756, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974), in which the Supreme Court applied a less stringent standard in determining the Constitutionality of penal legislation regulating members of the armed forces than it would apply in scrutinizing civilian legislation; holding that, for the reasons that differentiate military society from civilian society, Congress is permitted to legislate with both greater breadth and greater flexibility when prescribing the rules governing military society.

■ We do not find the statutory distinction between service members who are attached to or embarked in a vessel and those who are not to be violative of the equal protection principles encompassed in the Fifth Amendment's Due Process Clause. Persons attached to or embarked in vessels are treated differently from all other service members insofar as the latter have been afforded the right to demand trial by court-martial in lieu of nonjudicial punishment under Article 15, UCMJ, while the former have not. Statutory classifications are not per se unconstitutional; the matter depends on the character of the discrimination and its relation to legitimate legislative aims. *Mathews v. Lucas*, 427 U.S. 495, 503, 504, 96 S.Ct. 2755, 49 L.Ed.2d 651 (1976). To decide whether a law violates the Equal Protection Clause, we must look to three things: (1) the character of the classification in question; (2) the individual interests affected by the classification; and (3) the Governmental interests asserted in support of the classification. *Dunn v. Blumstein*,

405 U.S. 330, 335, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972). Equal protection analysis requires strict scrutiny of a legislative classification only when the classification impermissibly interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class. *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 312, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976). The right to demand trial by court-martial in lieu of nonjudicial punishment is not a fundamental Constitutional right. The statutory classification in question is not based upon an inherently suspect distinction such as race, religion, or alienage. Therefore, the test in determining whether equal protection principles have been violated is the "rational basis" standard; that is, whether the classification rationally furthers a legitimate Governmental purpose or interest. *See San Antonio Independent School District v. Rodriguez*, 411 U.S. 1, 55, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973). Equal protection principles are not violated merely because the classification is imperfect or there is some inequality in the manner in which the rationale is achieved. *Id.*, at 50, 51, 93 S.Ct. 1278. *Massachusetts Board of Retirement v. Murgia, supra*, 427 U.S. at 316, 96 S.Ct. 2562. The Congressional determination that service members attached to or embarked in a vessel may not demand trial by court-martial in lieu of nonjudicial punishment is rationally related to the objective of achieving discipline by providing an administrative method of dealing with minor offenses in situations in which trial by court-martial is not feasible. Convening a special court-martial is normally not feasible when a ship is at sea or in a foreign or domestic port where legal support facilities are not readily available. Affording the right to demand trial by court-martial to a service member attached to or embarked in a vessel might well consume "the resources of the Navy to a degree which Congress could properly have felt to be beyond what is warranted by the relative insignificance of the offenses." *Perfection in making the classification is unnecessary.* If the classification has some reasonable basis, it does not offend the Con-

stitution simply because it is not made with mathematical nicety or because, in practice, it results in some inequality. *Mathews v. deCastro*, 429 U.S. 181, 184, 97 S.Ct. 431, 434, 50 L.Ed.2d 389, 394 (1976). If there are alternatives, Congress is not required to choose the least restrictive one in achieving its objective. *San Antonio Independent School District v. Rodriguez, supra*, 411 U.S. at 51, 93 S.Ct. 1278. Therefore, we conclude that the Congressional determination that service members attached to or embarked in a vessel may not demand trial by court-martial in lieu of nonjudicial punishment under Article 15, UCMJ, does not violate equal protection principles.

■ Having concluded that the different treatment of service members attached to or embarked in a vessel, with respect to the imposition of nonjudicial punishment, does not violate Constitutional equal protection principles; we must now determine whether evidence of imposition of nonjudicial punishment upon members attached to or embarked in a vessel is admissible, in a subsequent trial by court-martial, as evidence of the character of prior service, to aggravate the penalty within the parameters prescribed under MCM, 1969 (Rev.), para. 127c. Clearly, the introduction of such evidence does not offend equal protection principles. Service members attached to or embarked in a vessel are not treated differently from those who are not so attached or embarked. Evidence of prior nonjudicial punishment that does not offend the due process guarantees of the Fifth Amendment or other Constitutional principles is admissible against both classes of service members. Such evidence is received as evidence of the character of an accused's prior service. It may not be used to escalate the penalty, because it does not constitute evidence of prior convictions, which may authorize a greater punishment. This evidence is similar to other personal records reflecting the past conduct and performance of the accused and may be properly admitted pursuant to MCM, 1969 (Rev.), para. 75d. We reject the accused's contention that use of evidence of any non-

judicial punishment in aggravation constitutes utilization of it as evidence of prior convictions, contrary to the intent of Congress. The Court of Military Appeals has rejected this position, which is based upon the dissent of Judge Ferguson in *United States v. Johnson,* 19 U.S.C.M.A. 464, 42 C.M.R. 66 (1970). *United States v. Booker, supra,* at 449 n. 24. Derogatory performance evaluations and other adverse matters may be properly recorded in official records and introduced, even though the accused has not been provided with counsel or afforded a hearing with respect to such matter. Evidence of nonjudicial punishment properly imposed is, justifiably, treated no differently. The reasoning in *United States v. Booker, supra,* does not support the exclusion of such evidence. In *Booker* the Court of Military Appeals merely held that, when an individual has a right to demand trial by court-martial in lieu of nonjudicial punishment, he must be advised of his right to consult with counsel before he opts for nonjudicial punishment, because of the due process considerations involved in the waiver of his right to a full adversary criminal proceeding. In order to give meaning to the due process requirement that the individual be advised of his rights, the Court provided for the exclusion at subsequent courts-martial of evidence of nonjudicial punishment, absent a showing that the required advice had been given. *Id.* 3 M.J. at 449 n. 24. The Court, however, had no sound reason for and revealed no intention of mandating the exclusion of evidence of legally imposed nonjudicial punishment in cases in which no advice is required because the individual has no right to demand trial. *Booker* only excludes evidence of defective nonjudicial punishment. Evidence of nonjudicial punishment that offends no Constitutional principle is admissible. As we have seen, imposition of nonjudicial punishment upon service members attached to or embarked in a vessel who have not been afforded the right to demand trial by court-martial in lieu thereof offends no Constitutional principle. Therefore, evidence of such punishment may be used in a subsequent court-martial as evidence of the character of an accused's prior service, for the purpose of aggravation.

Accordingly, the findings of guilty and sentence as approved on review below are affirmed.

Judge GRANGER concurs.

NEWTON, Senior Judge (concurring/dissenting):

I concur in the result.

I disagree with my brothers in their conclusion at law. Evidence of the award of nonjudicial punishment, when the recipient is attached to or embarked in a vessel, should not be admissible to aggravate the penalty prescribed for other offenses tried at a later court-martial, as evidence of the character of prior service, unless decisional criteria recently announced are met. *See, Manual for Courts-Martial, United States, 1969* (Revised edition), paragraphs 75*d* and 127*c*; JAGMAN 0117; Article 15, Uniform Code of Military Justice; *United States v. Booker,* 3 M.J. 443 (C.M.A.1977).

I do not agree with the law enunciated in *United States v. Booker, supra.* Twenty-five years of practice and precedent were abruptly changed, with disallowance of previously valid sentence assessment information made available to sentencing authorities, by that decision. But, *Booker* does state the military law. It should be made equally applicable to all members of the United States military forces. If not, there is no equality of treatment or punishment for armed forces personnel. By the majority decision, individuals who serve the more onerous duty at sea face the prospect of receiving punishment more harsh than their fellow servicemen on shore. I find no reason to suppose that inequality is reasonably imposed under some esoteric legal theory involving distinction between classes. The following example illustrates the point.

A sailor on duty ashore has an option to refuse the award of nonjudicial punishment by his commanding officer. He must be advised of that right and he must be afforded an opportunity to consult with independent counsel, a lawyer, prior to opting

for nonjudicial punishment. If not advised of his option, or if not afforded an opportunity to consult with a lawyer, or both, evidence of the award of that nonjudicial punishment may not be used to aggravate the penalty for another offense tried at a later court-martial. If so advised, that evidence is admissible to aggravate the later court-martial penalty. *United States v. Booker, supra*. A sailor on duty aboard ship has no option to refuse nonjudicial punishment, and, as a consequence, he has no derivative right to consult with a lawyer prior to the award of such punishment. The latter situation is by statutory fiat. Article 15, UCMJ. My brothers say that the sailor or marine assigned to duty aboard ship may reap the dubious benefit of admission of evidence aggravating his court-martial punishment, while the sailor or marine assigned to duty ashore and afforded the same treatment may not be so pilloried, because sailors and marines aboard ship are in a class by themselves. Equality and fair treatment? No!

In *United States v. Booker, supra*, the United States Court of Military Appeals evinces a clear mandate that an individual must be afforded the advice of legally trained counsel in order to permit him to make an informed decision, *i. e.* in order to give that person an opportunity to make a knowledgeable decision as to waiver of his right to appear in a trial forum for adjudication of his guilt of an offense under the UCMJ. In that context, it is waiver of trial which is the important aspect of the *Booker* decision. That is, if an individual faces punishment for an alleged offense, and if that individual feels he is innocent, he is afforded the opportunity to request trial rather than running the risk of a single individual—his commanding officer—deciding whether or not he is guilty, without benefit of an adversary legal proceeding. An individual may not desire to experience that risk. Unless he is a sailor or marine attached to or embarked in a ship (vessel) he may refuse that risk. Article 15, UCMJ.

*United States v. Booker, supra*, while it may forewarn a mandatory procedural change to summary court-martial and non-judicial punishment proceedings under the High Court's supervisory authority as noted in *United States v. McPhail*, 24 U.S.C.M.A. 304, 52 C.M.R. 15, 1 M.J. 457 (1976), is now construed as establishing an exclusionary rule of evidence. *Cf.* SECNAV Message 012307Z, December 1977, ALNAV 073/77. That rule was established to give meaning to due process guarantees of the Fifth Amendment, and to fair treatment. *United States v. Booker, supra*, 3 M.J. at 448.

I quarrel not with my brothers decision as to the current legality of awards of nonjudicial punishment, whether aboard ship or on shore. There is valid reason for summary punishment at sea. I part with them on the single aspect of the admissibility as aggravating evidence of awards of nonjudicial punishment at subsequent court-martial proceedings. As the above example shows, a man on board ship may be the evidentiary victim of a prior poor service record, merely because he was on duty at sea; while his shore-duty contemporary may not experience that debility, under the same disciplinary-judicial circumstance, merely because he had the good fortune to be ashore. Aside from the Constitutional, legal, and philosophic ramifications of such a happenstance, I find nothing fair or equal in that occurrence. I do not believe a sailor at sea knowingly, intentionally, or necessarily waives equal treatment by going to sea. I am unable to agree with my brothers because I find such a possibility abhorrent to a reasonable sense of fairness. It cannot be right. It cannot be a valid application of leadership principles, amongst which fair treatment of personnel is basic.

I would impose a requirement that shipboard commanding officers provide an accused with an option to choose a court-martial rather than nonjudicial punishment, and an opportunity to confer with independent counsel prior to opting for disposition of the case, if the evidence of imposition of that discipline is to be admissible in a subsequent court-martial trial. Of course, such a requirement has no effect, or bearing, on the authority of a commanding officer to

impose nonjudicial punishment. The requirement only affects the admissibility of service record evidence at a later and different trial by court-martial. *United States v. Booker, supra*, and the need for reasonably fair and equal treatment amongst members of the military service require such action.

The above conclusion results in consideration of shipboard nonjudicial punishment records in the same manner as all other records of nonjudicial punishment under consideration in the *Booker* case. That result necessitates decision, or assumption, that the *Booker* rule is retroactive in application, or a determination that it is not retroactive. The latter determination does not seem viable. The Secretary of the Navy is responsible for promulgation of regulations as to the admissibility of records of nonjudicial punishment, paragraph 75*d* of the *Manual, supra*, and he has acted. JAGMAN 0117, and, more recently, AL-NAV 073/77, *supra*. The ALNAV, paragraph 2.M, provides that cases not finally reviewed prior to 11 October 1977 should be reviewed in accordance with *United States v. Booker, supra*. Although the ALNAV contains a disclaimer, paragraph 8, as to infringement upon the independent judgment of military judges, it is for guidance to personnel associated with military justice matters (the convening authority?). No obvious reason appears to exclude the AL-NAV from the scope of paragraph 75*d* of the *Manual, supra*. Concepts of fairness and equal treatment demand otherwise; for no good reason exists to apply the Secretary's guidance to all cases except those before this Court. The effect of ALNAV 073/77 is to apply the *Booker* rule retroactively to all cases not finally reviewed. That ALNAV nullifies any necessity to decide whether or not *United States v. Booker, supra*, is to be afforded retroactive application under the principles noted in *United States v. Jackson*, 3 M.J. 101 (C.M.A. 1977). For the Navy, the decision has been made. *United States v. Booker, supra*, is to be afforded retroactive application to all cases not finally reviewed.

I find that admission of evidence of the award of nonjudicial punishment to this accused on five occasions was erroneous. However, I further find that the error had no prejudicial effect on the relatively lenient sentence awarded for the series of short but numerous unauthorized absences here charged and found. For that reason, I join to affirm the findings and sentence awarded and heretofore approved. Beyond reasonable doubt, the error is nonprejudicial to the accused. *United States v. Ward*, 23 U.S.C.M.A. 572, 50 C.M.R. 837, 1 M.J. 176 (1975).

Finally, I must note that my view as herein expressed should not be construed as expressing agreement with the rule enunciated in *United States v. Booker, supra*. I believe *Booker* sets out bad law, which substantially changes the military justice-discipline system in the armed forces. I believe that this change is detrimental to the justice system and detrimental to the disciplinary structure of the armed forces. A military justice system is a discipline system as well as a criminal law system. The *Booker* rule requires that an offender be punished at court-martial, without recourse to his past service conduct. It requires uninformed decision making by sentencing authorities. In that sense, it is unfair. It erroneously assumes Commanding Officers are inept. Its effect is detrimental to the security of this country, because it further weakens control over the military forces. Albeit unintentional, it is another drop of acid on the fabric of the military security of this country. If present trends continue— not found in our military justice system alone—that security will become dangerously eroded. Only disciplined personnel make an effective military force. However, *Booker* is the law. The wisdom of that law must be decided by the Congress and higher courts. We can but comply. Engrafting exceptions to the rule can avail little but further confusion, already rampant, as to its application. As noted here, those exceptions may cause unfair and unequal treatment to military personnel. I find no merit in that course of action. The best solution is to overrule or repeal the *Booker* rule before further damage is done.