### UNITED STATES

v.

**David O. NORDSTROM, Jr., 262 37 2946, Seaman Recruit (E-1), U. S. Navy.**

**NCM 77 1728.**

U. S. Navy Court of Military Review.

Sentence Adjudged 3 June 1977.

Decided 30 March 1978.

LT Philip G. Cohen, JAGC, USNR, Appellate Defense Counsel.

CAPT Geoffrey D. Fallon, USMCR, Appellate Government Counsel.

Before DUNBAR, Senior Judge, and BAUM and MALLERY, JJ.

DUNBAR, Senior Judge:

Appellant was charged with, and pled guilty to, Articles 80, 85, 92, 95 and 134 of the Uniform Code of Military Justice, 10 U.S.C. §§ 880, 885, 892, 895, 934. A single specification was alleged under each Article. He was found guilty of the charges and specifications in accordance with his pleas; however, after findings, the military judge dismissed the charges laid under Article 92, UCMJ. Appellant was sentenced to be discharged with a bad-conduct discharge, to be confined at hard labor for 100 days and to forfeit $248.00 pay per month for 3 months. Pursuant to a pretrial agreement, the convening authority approved the sentence but suspended confinement at hard labor in excess of 70 days for the period of confinement and 6 months thereafter. The supervisory authority approved the sentence as approved and suspended by the convening authority.

Appellant now asserts the following specific Assignments of Error:

I

THE MILITARY JUDGE ERRED, TO THE SUBSTANTIAL PREJUDICE OF APPELLANT, BY ADMITTING IN AGGRAVATION PROSECUTION EXHIBIT 4, SINCE IT FAILS TO STATE A SPECIFIC OFFENSE. *UNITED STATES V. ROBERTS*, No. 77 2094 (N.C. M.R. 8 DECEMBER 1972).

II

THE MILITARY JUDGE ERRED, TO THE SUBSTANTIAL PREJUDICE OF APPELLANT, BY ADMITTING IN AGGRAVATION PROSECUTION EXHIBIT 6. *UNITED STATES V. BOOKER*, 5 M.J. 238 (C.M.A.1977).

III

THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT BY ADMITTING IN AGGRAVATION PROSECUTION EXHIBITS 1, 3, 4 and 5.

I

Appellant states that Exhibit 4, a record of nonjudicial punishment admitted in aggravation at his trial, fails to state a specific offense, thereby rendering it inadmissible. The exhibit indicates on its face a violation of "Article 92, UCMJ, Derelicty (sic) In Duty." We find the offense sufficiently described to ascertain its true nature and also distinguishable from the case cited by appellant, *United States v. Roberts*, No. 72 2094 (N.C.M.R. 8 December 1972).

II

Of the five records of nonjudicial punishment introduced into evidence, appellant asserts that the one incurred at a shore activity, Prosecution Exhibit 6, should have been excluded from consideration pursuant to *United States v. Booker*, 5 M.J. 238 (C.M.A. 1977).

*United States v. Booker, supra*, held that an individual must be told of his right to confer with counsel before he "opts" for disposition at the Article 15, UCMJ, or summary court-martial level. This is supported by reasoning that the consequences of a decision to accept an Article 15, UCMJ, or a summary court-martial disciplinary action involve due process considerations, *i. e.*, waiver of the right to a full adversary criminal proceeding with its attendant Fifth and Sixth Amendment protections, and that only a legally trained person can supply the requisite quantum of information necessary for an informed decision.

■ Therefore, the crux of appellant's second assignment of error is that if *Booker* is retroactive, then evidence of a prior nonjudicial punishment administered at a shore station should not have been admitted in evidence because appellant was not told of his right to confer with counsel. We will not go into the question of *Booker's* retroactivity because it is presently under consideration by this Court sitting as a whole in the case of *United States v. Harrell*, No. 77 1628 (N.C.M.R. ——). Nevertheless, assuming without deciding, that there is merit to appellant's assignment and that the record of the one prior nonjudicial punishment incurred at a shore station should have been excluded pursuant to *Booker*, we are of the opinion that appellant was not substantially prejudiced by admission of this exhibit, and that, even conceding he were, such prejudice could be corrected by our reassessment of the sentence.

### • III

Appellant also argues that records of four nonjudicial punishments, Exhibits 1, 3, 4 and 5, are inadmissible because the nonjudicial punishments were administered aboard ship, where, by law (Article 15, UCMJ), he could not refuse them as he might if stationed ashore.

While appellant agrees that those exercising the command function need the disciplinary action provided under Article 15, UCMJ, and assumes *arguendo* that there are compelling reasons for requiring members attached to or embarked in a vessel at sea to involuntarily forego the fundamental right to a judicial hearing, appellant argues that introduction at a court-martial of records of Article 15, UCMJ, punishment which could not be refused is improper. He submits that the admission of these exhibits is: (1) violative of equal protection principles which are encompassed in the Fifth Amendment's due process clause, citing *Mathews v. DeCastro*, 429 U.S. 181, 97 S.Ct. 431, 50 L.Ed.2d 389 (1976) and *Schneider v. Rusk*, 377 U.S. 163, 84 S.Ct. 1187, 12 L.Ed.2d 218 (1964); (2) contrary to the reasoning of the United States Court of Military Appeals in *Booker, supra*; and (3) contrary to the intent of Congress (Chief Judge Ferguson in a *concurring opinion* in *United States v. Johnson*, 19 U.S.C.M.A. 464, 42 C.M.R. 66 (1970), citing authorities in support of his belief that Congress did not intend for nonjudicial punishment records to be used as matters in aggravation at courts-martial).

The difficulties arising from *Booker*, relating to admissibility at courts-martial of nonjudicial punishment records incurred by shipboard personnel who may not refuse Article 15, UCMJ, punishment, have been discussed competently in *United States v. Lecolst*, 4 M.J. 800 (N.C.M.R.1978). In *Lecolst*, the majority stated:

> We do not find the statutory distinction between service members who are attached to or embarked in a vessel and those who are not to be violative of the equal protection principles encompassed in the Fifth Amendment's Due Process Clause. Persons attached to or embarked in vessels are treated differently from all other service members insofar as the latter have been afforded the right to demand trial by court-martial in lieu of nonjudicial punishment under Article 15, UCMJ, while the former have not. Statutory classifications are not per se unconstitutional; the matter depends on the character of the discrimination and its relation to legitimate legislative aims. *Mathews v. Lucas*, 427 U.S. 495, 503, 504, 96 S.Ct. 2755, 49 L.Ed.2d 651 (1976).

■ Therefore, *Lecolst* stands for the proposition that, constitutionally, there is nothing objectionable in Article 15, UCMJ, providing that shipboard personnel cannot refuse nonjudicial punishment although shore based personnel may. In other words, there is no violation of equal protection principles. We agree. This appears to be a reasonable statutory classification to meet the unique problems of shipboard discipline.

However, to say that an accused at sea has no right to refuse Article 15, UCMJ, punishment differs from saying that, in light of *Booker*, the record of the punishment, which could not be refused, can later be introduced as evidence in aggravation at a court-martial. Previously, the shipboard individual and the shore-based individual shared the same legal position *vis-a-vis* the admissibility of prior nonjudicial punishment records. If, however, the exclusionary rule described in SECNAV 9640/012307Z Dec. 77 (hereinafter ALNAV 073/77) is applicable to Article 15 hearings, we most likely may anticipate that many commands ashore, for practical reasons, will not want to interject such concepts as the right to confer with independent counsel and the written waiver, described in ALNAV 073/77, into Article 15 proceedings.

Consequently, it may very well be that many persons appearing at nonjudicial-punishment hearings of shore stations in the future will not have to feel any concern that their wrongdoing will later be introduced against them in a subsequent court-martial. The dissent in *Lecolst* intimates, rightfully I think, that *Booker* will ultimately create unfair and unjust rules with regard to introduction in evidence of nonjudicial punishment records.[1]

Therefore, although we sense future evidentiary complications as a result of *Booker*, we must hold at this time that admission in evidence of records of shipboard nonjudicial punishment does not violate the due process clause of the Fifth Amendment and is neither contrary to the intent of Congress nor the reasoning in *Booker*, as best we understand that decision. The third assignment of error is not concurred in.

Our disposition of appellant's assignments of error in this case does not in any way address the larger, indeed, the fundamental, issues posed by this and numerous other cases in which *Booker* has been cited as controlling authority. Therefore, it seems appropriate to briefly confront and discuss some of these issues at this time to insure that there is no misunderstanding concerning this Court's assessment of that opinion.

As was pointed out in the concurring opinion in *United States v. Williamson*, 4 M.J. 708 (N.C.M.R.1977), we at the appellate level must grapple candidly with radical changes taking place in the area of military law. Whether or not we agree with these changes, we have no authority or desire to circumvent or to ignore the mandates of the Court of Military Appeals despite implications to the contrary.[2] We do have a duty to make discriminating, critical, and level-eyed analyses of questionable opinions and to *register our objection to them*, when warranted, in the decisions we hand down. This may require considerable insight and the ability to look backstage, so to speak, in an effort to determine the motives and the emotional attitudes behind

1. It also appears likely that any accused, by choosing to confer with independent counsel, can most probably defer his Article 15, UCMJ, hearing for a protracted period. But, does this not subvert the fundamental military purpose of an otherwise speedy and informal proceeding?

2. In the text of a speech entitled, "Where the Court of Military Appeals is Going in the COMA Evolution," The Chief Judge of the High Court states that:

The Court [of Military Appeals] avoids hard and fast procedural implementation of its opinions applicable to all branches of the services—believing as we do that there are differences in the branches and the fine tuning is best done by the individual services. *We do not believe that ignoring our decisions or attempting circumventions of our decision is fine tuning.* [Emphasis supplied]

the military High Court's reasoning in a particular case: *e. g., Booker*. This is not to say that the sincerity or integrity of the High Court is being challenged.

The opinion rendered in *Booker* has established substantive changes in procedures connected with nonjudicial punishment and summary courts-martial. That these changes have been received with considerable mental reservation and puzzlement by the military legal community cannot be denied. There appears to be some justification for this reception. What the recent and controversial cases of *United States v. Elmore*, 24 U.S.C.M.A. 81, 82–83, 51 C.M.R. 254, 255–256, 1 M.J. 262 (1976) (Fletcher, C. J., concurring) and *United States v. Green*, 24 U.S.C.M.A. 299, 52 C.M.R. 10, 1 M.J. 453 (1976) lacked in clarity and accuracy of expression, *Booker* seems to lack in logic and meaning. In fact, I think it can be fairly stated that it is quite certain that few, if any, military lawyers, after reading *Booker*, have a truly comprehensive view of the course that military justice, both in spirit and in practice, is following. Consequently, the unreasonable differences between the legal prescriptions and proscriptions by the Court of Military Appeals in *Booker* and the interpretations and evaluations thereof by a great number of military lawyers have, in my opinion, become a matter of serious concern.[3] Moreover, as lawyers, I think we should all feel a sense of shame for the confusion of legal issues and the loss of the clear meaning of words that the opinion in that case has thrust upon command personnel responsible for the proper administration of military justice within the services.[4]

This Court is not opposed to change. But I think most legally trained persons in the military establishment have a sense that both the integrity and the value of their legal system flow from responsible, painstaking, and sensible construction, stone upon stone, by mature and dedicated legal minds of the military. Those who have gone before demonstrated at least *some* familiarity with and sensitivity to the military mission and the realities of precisely what procedures, legal or otherwise, are best calculated to further that mission. This, I believe, accounts for a natural tendency in the military establishment to resist, and regard with suspicion, "innovators" and "advanced thinkers"—except where their legal and military credibility and professional soundness have been unquestionably established.

*Booker* appears to be a perfect example of the point I am trying to make. That decision is based upon the United States Supreme Court opinion handed down in *Middendorf v. Henry*, 425 U.S. 25, 96 S.Ct. 1281, 47 L.Ed.2d 556 (1976). But, any attempt to make a methodical analysis of the innovative rationale contained in *Booker* in conjunction with *Middendorf* appears to baffle even the steadiest of legal reasoners. In the inferences the *Booker* decision draws from *Middendorf*, there is always a selective emphasis, a glossing-over of some part and apparent distortion of a portion of another (regrettable practice in appellate advocacy—inexcusable practice in appellate opinion writing) in order to reach what the concurring opinion in *Williamson, supra*, described as "made-in-advance conclusions", and the parts selectively emphasized always seem in close connection with the particular

---

**3.** In the February 20, 1978, issue of Navy Times there appeared a reader's opinion submitted by a general court-martial trial judge, Colonel R. Eleazer, USMC, along with an editor's comment, as follows:

Read with interest the article by Tom Philpott in your November 28 issue in which he reports an interview with Chief Judge Albert B. Fletcher, Jr. of the U. S. Court of Military Appeals. I must question whether the Chief Judge in fact made the comments attributed to him, for such comments would reflect a

misunderstanding of the military justice system and the purpose of military law. (Reporter Philpott stands by his story as being correct and that all of Chief Judge Fletcher's comments were accurately reported—Editor.)

**4.** *Booker*, when read in conjunction with ALNAV 073/77, would lead the average person, whether lawyer or layman, military or civilian, to conclude that military law has become a kind of legal madhouse.

interest and apparent presupposition of the Court of Military Appeals that counsel should be provided at summary courts-martial.

I think it can be reasonably said that the majority of military lawyers would agree that the *Booker* decision is simply a pseudorational manipulation of the contents of *Middendorf.* It smacks of a sort of youthful, one-sided idealism aimed at providing every protection conceivable for military wrongdoers; an idealism devoid of the slightest realization that the services might have a stake in the matter, or might be entitled to the reasoned assurances of the Court of Military Appeals that the disciplinary interests of the military services have been given due consideration.

*Booker,* for all its leaky logic, seems to say essentially that, henceforth, except where counsel was validly waived by the accused, counselless nonjudicial-punishment proceedings cannot be introduced at courts-martial to aggravate (increase, but only within established limits) any punishment otherwise authorized. Additionally, except where counsel was validly waived by the accused, prior counselless summary courts-martial may not be introduced at a subsequent court-martial to enhance (increase, but only within established limits) or escalate (exceed the normally established limits to include a punitive discharge and additional confinement and forfeitures) any punishment otherwise authorized.

This decision overrides and repudiates long-established provisions of the *Manual for Courts-Martial, United States, 1969* (Revised edition), which permitted the use of records of nonjudicial punishment and summary courts-martial for the purpose of aggravating, enhancing, and escalating punishments.

The ultimate determinations of the Court of Military Appeals in *Booker* seem to emanate from that Court's preoccupation with particular words and descriptive phrases contained in *Middendorf* from which the military High Court draws broad, sweeping and abstruse conclusions. The point I wish to make is that *Booker* purports to be the first-born child of *Middendorf.* Here, however, I think the line must be drawn, at least as far as the judicial integrity of this Court is concerned. If we legitimize *Booker* by passively accepting it, without protest, as representative of communicable and credible legal reasoning, then, in my opinion, there can be no further honest thinking in military law.

I do not agree with the Court of Military Appeals that *Middendorf, supra,* at 38–39, 96 S.Ct. 1281, officially redefined and recharacterized the summary court-martial from a "criminal proceeding" to a "disciplinary hearing." Realizing that the UCMJ cannot be equated to a civilian criminal code, the Supreme Court does not appear to have been the slightest bit interested in redefining summary courts-martial. Such a claim by the Court of Military Appeals is simply not in accordance with the case. The Supreme Court merely noted, for purposes of discussion, the unique characteristics of the summary court-martial. Accordingly, this Court specifically rejects as inaccurate and misleading the assertion by the Court of Military Appeals that the Supreme Court *redefined* summary courts-martial. I might point out that to the extent that a summary court-martial is a disciplinary hearing, so is a special court-martial and so is a general court-martial. The encouragement and maintenance of military discipline are what the UCMJ, nonjudicial punishment, summary courts-martial, special courts-martial, and general courts-martial, indeed, the entire military justice system are all about!

Furthermore, the objective of that system is not shared by any civilian justice system in this country, since unquestioning obedience, strict regimentation and sacrifice of the interest of the individual for military objectives are neither necessary, desirable, nor relevant concerns of the civilian justice system. In the military, however, these concerns constitute the indispensable conditions of an effective fighting force. They require a unique justice system. The Constitution, the Congress, the President, and the Supreme Court recognize and sanction

this requirement. The Court of Military Appeals, however, in such cases as *Booker*, continues to resist and to persist in the view that the protections found as essential in the civilian sector must necessarily be interfused with those found in the military.

Therefore, whether a summary court-martial is a criminal proceeding, in the civilian sense, or a so-called disciplinary proceeding, in any other sense, is wholly irrelevant in evaluating its function and utility in the entire military justice system. The Court of Military Appeals' narrow overreliance upon mere word symbols, to reach in-depth conclusions, is nowhere more manifest than here.

Moreover, I seriously question, by what prerogative, and for what compelling reasons have the traditional, workable, seemingly-just principles relating to the admissibility of nonjudicial punishment and summary court-martial records been peremptorily abrogated? I cannot accept as credible the Court of Military Appeals' statement that it has a "command" from the Supreme Court to ensure due process at such hearings and is therefore obligated to repudiate the provisions of a long-standing executive order specifically designed to insure due process. Are we to understand that due process was lacking in all the tens of thousands of court-martial cases that have utilized nonjudicial punishment and summary court-martial records pursuant to the evidentiary provisions of the *Manual for Courts-Martial*?

Particularly illustrative of the Court of Military Appeals' intransigence in this area is the statement in *Booker* that:

*It is in order to give some meaning to the due process guarantees of the Fifth Amendment* that we must provide limitations on the utilization of evidence of the imposition of discipline at a summary court-martial in a subsequent trial. Those hearings in which the accused was represented by counsel, or has executed a valid waiver of the assistance of counsel may be used for the purpose of enhance-

ment of punishment *since the basic concepts and Argersinger*, [*Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972)] *will have been met.* [*Id.* at 448–449 (Emphasis added)].

The emphasized portions of this statement appear sharply at odds with both the Supreme Court's holding in *Middendorf* that the due process guarantees of the Fifth Amendment do *not* require that an accused be afforded counsel at a summary court-martial, and its statement in that case, 425 U.S. at 36–37, 96 S.Ct. at 1288, that:

If we were to remove the holding of *Argersinger* from its civilian context and apply it to require counsel before a summary court-martial proceeding simply because loss of liberty may result from such a proceeding, it would seem all but inescapable that counsel would likewise be required for the lowest level of military proceeding for dealing with the most minor offenses . . . But we think that the analysis made in cases such as *Gagnon*[5] and *Gault*,[6] as well as considerations peculiar to the military, counsel against such a mechanical application of *Argersinger*.

Obviously, the Supreme Court indisputably has declared that neither the due process guarantees of the Fifth Amendment nor *Argersinger* apply to engraft any counsel requirements whatever to the summary court-martial process. Why then does the *Booker* opinion purport to be guided by the dictates of the Fifth Amendment and *Argersinger*? In light of logic, the law, and plain common sense, this Court strongly urges the Court of Military Appeals, in its reconsideration of *Booker*, to overturn its prior holdings in that case.

Subject to the foregoing, the findings and the sentence, as approved below, are affirmed.

Judge MALLERY, concurs.

5. *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973).

6. *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967).

BAUM, Judge (concurring in the result):

I would affirm the findings and sentence because I believe evidence of shipboard nonjudicial punishments are admissible for sentencing purposes and I do not believe *United States v. Booker,* 5 M.J. 238 (C.M.A.1977) applies retroactively. I agree with the general thrust of Senior Judge Dunbar's opinion as well as his conclusion that *Booker* should be overturned, but I would confine the comments to a discussion of the breach by the Court of Military Appeals of its obligation to follow the law as enunciated by the United States Supreme Court.

*United States v. Booker,* while purporting to apply the Supreme Court's decision in *Middendorf v. Henry,* 425 U.S. 25, 96 S.Ct. 1281, 47 L.Ed.2d 556 (1976), has, in fact, contravened it by perpetuating a requirement for counsel at summary courts-martial. The Court of Military Appeals, in addition, has gone on to create new prerequisites for both summary courts-martial and nonjudicial punishments never even hinted at in *Middendorf v. Henry.* The new imperative for counseling from lawyers before an accused can opt for nonjudicial punishment or a summary court-martial is not required by *Middendorf v. Henry* and will surely result in delays that can rob these proceedings of their promptness and their effectiveness. Furthermore, to the detriment of both accused and command alike, the *Booker* decision has severely restricted the power of commanding officers to refer suspected offenders to the lowest possible adjudicating authority, by arbitrarily imposing a limitation on the subject matter jurisdiction of summary courts-martial and nonjudicial punishment. Not one of these new rules for summary courts-martial and nonjudicial punishment was mandated by the Supreme Court. In fact, they are not even alluded to in *Middendorf v. Henry,* and surely are contrary to the spirit of that decision.

A look at the background leading up to *United States v. Booker,* may shed some light on the enormity of the decision of the Court of Military Appeals in that case. *Booker* was precipitated by *Middendorf v.*

*Henry,* which in turn had been spawned by the United States Navy's stand on the applicability to the military of an earlier Supreme Court decision, *Argersinger v. Hamlin,* 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972). In *Argersinger* the Supreme Court had held that the Sixth Amendment to the United States Constitution required appointment of counsel for indigents before confinement could be imposed, even in misdemeanor cases. The Navy said that the *Argersinger* holding was inapplicable to the military, particularly with respect to summary courts-martial. This position was promptly challenged in federal court and ultimately appealed to the Supreme Court. Meanwhile, prior to that Court's ultimate resolution of the matter in *Middendorf v. Henry,* the United States Court of Military Appeals ruled in *United States v. Alderman,* 22 U.S.C.M.A. 298, 46 C.M.R. 298 (1973), that *Argersinger* was applicable to the military and found constitutional requirements for providing counsel at summary courts-martial. The conclusions of the Court of Military Appeals in *Alderman* have been clearly and unequivocally rejected by *Middendorf v. Henry,* which held that the requirements of *Argersinger* did not apply to the military summary court-martial, that there was no Sixth Amendment right to counsel in summary court-martial proceedings and that Fifth Amendment due process requirements were also met without a separately appointed counsel acting exclusively in an accused's behalf at a summary court-martial. In so ruling, the court noted the various protections afforded in a trial by summary court-martial, including the requirement that the summary court-martial officer safeguard the interests of the accused. Now, in the face of the Supreme Court's clear position on this matter, the United States Court of Military Appeals has, in the following language, declared itself outside the reach of our highest court:

It is in order to give some meaning to the due process guarantees of the Fifth Amendment that we must provide limitations on the utilization of evidence of the imposition of discipline at a summary court-martial in a subsequent trial.

Those hearings in which the accused was represented by counsel, or has executed a valid waiver of the assistance of counsel may be used for the purpose of enhancement of the punishment since the basic concepts and protections of *Argersinger* will have been met.[1]

Furthermore, although *Alderman* is never mentioned in *Booker*, the Court's failure to renounce that earlier case, coupled with the above quote, certainly indicates that *Alderman* is still considered valid law by the Court of Military Appeals. Added to this is the fact that the United States Court of Military Appeals has, after two years, still not specifically answered the question of *Alderman's* continued viability, which was certified to it by the Judge Advocate General of the Navy in March 1976.[2]

One is led inevitably to the conclusion that the Court of Military Appeals has consciously chosen to disregard the United States Supreme Court on this matter. In taking this course, the Court of Military Appeals has failed to follow its own stated *modus operandi* when in disagreement with the Supreme Court. In *United States v. Sims*, 2 M.J. 109 (C.M.A.1977), the Court said, " . . . we must be content to express any misgivings or disagreements in opinions, which, nonetheless, conform in disposition to the holdings of the Supreme Court."[3] Just the opposite tack has been taken in *Booker*. Lip-service deference has been given to the Supreme Court while refusing, in fact, to conform to its decision. This message comes through loud and clear at page 240 of *Booker* where the Chief

Judge states, " . . . with proper deference to the Supreme Court . . . " and then goes on in footnote 13 to cite published criticism of the Supreme Court's decision in *Middendorf v. Henry*, along with problems he sees associated with the fact that a summary court-martial officer is a "lay person", and then concludes with this statement:

It is these factors coupled with our evaluation of the overall ramifications of *Middendorf* which compel this decision as to the use of summary courts-martial.

Thus, it appears that the Court of Military Appeals, in disagreement with the conclusions in *Middendorf v. Henry*, felt impelled to a decision that would modify its results.

Up to now there has never been a direct appeal to the United States Supreme Court from a decision of the Court of Military Appeals and no sanctioned procedure for such an appeal is readily apparent. Necessity, however, is the mother of invention. The Court of Military Appeals would do well to carefully consider the ramifications of its flagrant departure from a Supreme Court decision. Abuses of power inevitably provoke reactions which can undo valuable and important changes that have developed. I, for one, would hate to see the many good things advanced by the Court of Military Appeals swept aside in a broad legislative or executive reaction to cases such as *Booker*. Hopefully, the Court of Military Appeals in its present limited reconsideration of *Booker*[4] will see the wisdom of renouncing its prior action in its entirety and act accordingly. Otherwise, since the United

1. *United States v. Booker,* 5 M.J. 243, 244.

2. *United States v. Redmond*, NCM No. 76 0006 of 23 February 1976, certified for review to the Court of Military Appeals by the Judge Advocate General of the Navy on 29 March 1976 pursuant to Article 67(b)(2), Uniform Code of Military Justice on the following issue:

Was the United States Navy Court of Military Review correct in its determination that the military judge and reviewing authorities erred prejudicially by considering evidence of the accused's two prior convictions by summary court-martial, *United States v. Alderman*, 22 U.S.C.M.A. 298, 46 C.M.R. 298 (1973), in light of *Middendorf v. Henry* [425

U.S. 25, 96 S.Ct. 1281, 47 L.Ed.2d 556] (March 24, 1976)?

The Court of Military Appeals subsequently affirmed *Redmond*, without opinion, citing only *United States v. Booker*, 5 M.J. 238 (C.M.A. 1977); *United States v. Redmond*, 4 M.J. 56 (C.M.A.1977).

3. *Id.* at 112, n. 8.

4. The Court of Military Appeals on November 28, 1977 granted a petition for reconsideration of *Booker* for the limited purpose of considering:

Whether summary courts-martial should be limited to disciplinary actions concerned solely with minor military offenses unknown in the civilian society. 4 M.J. 137.

States Supreme Court deemed the questions posed in *Middendorf v. Henry* important enough for review and resolution by the highest court in the land, it might very well consider an inferior court's decision to distort and pervert that ruling ample reason to exercise its supervisory jurisdiction over that lower United States Court by entertaining a petition for a writ of mandamus,[5] just as the United States Court of Military Appeals has felt compelled to take extraordinary action in the exercise of its "supervisory function" when the circumstances so required.[6]

## UNITED STATES

---

**5.** *Ex parte Bradley,* 74 U.S. (7 Wall.) 364, 19 L.Ed. 214 (1869).

**6.** *McPhail v. United States,* 1 M.J. 457 (C.M.A. 1976).