UNITED STATES

v.

**Ramon C. RIVERA, 465 17 8389, Fireman Apprentice (E–2) U. S. Naval Reserve.**

**NCM 78 0469.**

U. S. Navy Court of Military Review.

Sentence Adjudged 30 Nov. 1977.

Decided 6 Oct. 1978.

LT Philip G. Cohen JAGC, USNR, Appellate Defense Counsel.

LT Frank J McDougald, Jr., JAGC, USNR, Appellate Defense Counsel.

LT Sander Mednick, JAGC, USNR, Appellate Government Counsel.

Before CEDARBURG, C. J., and DUNBAR and MICHEL, JJ.

DUNBAR, Senior Judge:

Appellant was tried by special court-martial at Naval Legal Service Office, Naval Station, Norfolk, Virginia. He pleaded to and was found guilty of nine specifications under Article 86, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 886, and one specification under Article 87, UCMJ, 10 U.S.C. § 887. He was sentenced to be confined at hard labor for 100 days, to forfeit $265.00 pay per month for 3 months, to be reduced to pay grade E–1 and to be discharged from the naval service with a bad-conduct discharge.

The specific issue in this case arose during trial. The military judge admitted documents into evidence which reflected appellant's previous conviction by summary court-martial. These documents fail to show that appellant was advised of his right to consult with a lawyer prior to electing to be tried by summary court-martial, or that he in fact waived his right of removal to a special or general court-martial. Nor was such shown independently on the record. The documents do record appellant's acknowledgement by signature, however, of having been advised of the right to be defended by an attorney and of his election to be tried without legal representation.

The summary court-martial conviction was considered by the military judge as aggravation in sentencing. The convening authority approved the sentence as adjudged. The record was then forwarded to the supervisory authority, who was advised by his staff judge advocate to reassess the sentence due to the erroneous admission of two nonjudicial punishment records. The record of the summary court-martial conviction was considered by the convening and supervisory authorities to have been properly admitted into evidence. The supervisory authority accordingly reassessed the sentence because of the improperly admitted nonjudicial punishment records and approved the bad-conduct discharge.

Citing the Staff Judge Advocate's review based upon *United States v. Booker*, 3 M.J. 443 (C.M.A.1977), appellant now asserts that the military judge, the staff judge advocate and the convening authority all erred. He petitions our remand of the case for a rehearing on the sentence, asserting improper admission of the summary court-martial.

In the case of *United States v. Nordstrom*, 5 M.J. 528 (N.C.M.R.1978), this Court seriously questioned the content and meaning of the *Booker* decision in anticipation of problems of the type encountered in this case. Similarly, in *United States v. Williamson*, 4 M.J. 708 (N.C.M.R.1977), the concurring opinion expressed concern over the failure of the Court of Military Appeals to render its opinions in clear, accurate and communicable language. We observe once again that the language in *Booker* is elusive and, in areas, woefully unintelligible, to the distinct disadvantage of command personnel responsible for the administration of discipline within the military service.

We attribute much of this lack of communicability on the part of the High Court to be a probable result of its continuing effort to civilianize the military justice system.[1]

It would appear that many persons remain quietly indifferent to the High Court's efforts to reconstruct the United States military justice system.[2] Some even appear quite hospitable to such efforts. Nevertheless, in the fulfillment of our inherent and statutory judicial responsibility, we recognize a duty to question and critically examine the wisdom, justification and *authority* for such transformation. Moreover, we do believe that a complete understanding of the legal issue posed by this case is not possible without some knowledge of these changes taking place and how they relate to the problem now being considered.

We interpret civilianization[3] of the military justice system to mean the effort to

---

1. "[T]he burden of showing that military conditions require a different rule than that prevailing in the civilian community is upon the party arguing for a different rule." *Courtney v. Williams*, 1 M.J. 267 (C.M.A.1976).

2. For a trenchant analysis of how the Court of Military Appeals has changed significantly the United States military justice system, including invalidation of the powers of the military commander, *see*: Cooke, *The United States Court of Military Appeals, 1975–1977* . . ., 76 Mil.L.R. 43 (1977).

3. "Civilianization" of the military justice system is no mere bubble blown out of a legal pipe dream. Records of trial reveal that even our military judges, along with the High Court, often refer to a duly constituted military membership court as "the jury". And only recently this Court considered an assignment of error wherein it was asserted that the accused was denied a fair trial because the "jury" that tried him was not composed of 12 members. Apparently, we seem to be entering a period where we are using the same terms with different meanings.

transpose values, practices and protections found essential in the civilian legal sector into the military establishment in apparent disregard of the fact that there are strivings, outlooks, and objectives present within the military forces which appear to be neither relevant nor susceptible to such interfusion. As this Court pointed out in *Nordstrom*, the Constitution, the Congress, the President (*Manual for Courts-Martial, United States, 1969* (Revised edition)), and the Supreme Court have recognized the requirement for a unique military justice system. Yet, during the past few years, changes have been wrought in this unique system in a measure beyond anything previously contemplated. It might be asserted that these controversial changes were fashioned by persons lacking broad and balanced military backgrounds, without effective military protest or opposition.

Nonetheless, civilianization appears to be a materializing fact, carrying with it concepts, language symbols and contemporary jargon foreign to the established body of military law. Thus, we note the use by the Court of Military Appeals of such words and phrases in *Booker* as "juvenile hearings", "*parens patriae*", "two-tiered court system", "lay judges", "discovery tool", "minor military offenses unknown in the civilian society"[4] "requisite quantum of information", "[military] indigent", "indictment", and "Catch-22 logic of the Government". Furthermore, it is quite undeniable that considerable confusion and expenditure of time and resources have resulted from the decisions in such cases as *United States v. Catlow*, 23 U.S.C.M.A. 142, 48 C.M.R. 758 (1974); *United States v. Russo*, 1 M.J. 134 (C.M.A.1975); *United States v. Alef*, 3 M.J. 414 (C.M.A.1977); and *United States v. Green*, 1 M.J. 453 (C.M.A.1976), as well as *United States v. Booker*, which in our opinion, have left many half-articulated questions unresolved.[5]

In *Booker*, the Court of Military Appeals stated that it had received a "command" from the United States Supreme Court to insure that hearings conducted under Article 15, UCMJ, 10 U.S.C. § 815 (nonjudicial punishment proceedings), and under Article 20, UCMJ, 10 U.S.C. § 820 (summary court-martial proceedings) "measure up to the

---

**4.** Although this language first appeared in *Middendorf v. Henry*, 425 U.S. 25, 96 S.Ct. 1281, 47 L.Ed.2d 556 (1976), its intrinsic vagueness certainly did not warrant its repetition as a mandate. Fortunately, the Court of Military Appeals has reversed its prior holding relating to this phrase in its reconsideration of *Booker*. *United States v. Booker*, 5 M.J. 246 (C.M.A. 1978). Therein, the High Court held no provision of the United States Constitution denies to Congress, in view of its authority to "make Rules for the Government and Regulation" of the armed forces, the right to say what offenses may be tried before a summary court-martial. U.S. Constitution, Article I, Sec. 8, cl. 14. Therefore, summary court-martial jurisdiction cannot, in contravention of specific provisions of the UCMJ enacted by Congress, be arbitrarily limited to "minor military offenses unknown in the civilian community."

**5.** The *"Catlow-Russo"* cases present perfect examples of the military justice system being used as a tool to discipline recruiters. In those cases, the High Court ruled that an enlistee may illegally conspire with his recruiter to effect enlistment, serve in the military forces for an extended period of time and then use his earlier illegal conspiracy to escape the consequences of his misdeeds, no matter how heinous, by simply alleging that his prior enlistment wrongdoing voids his enlistment and

court-martial jurisdiction. *Alef* has produced various types of unusually worded, if not bizarre, specifications as many speculate concerning what the High Court actually meant when it stated the Government must affirmatively demonstrate through "sworn charges/indictment," the jurisdictional basis for trial of the accused and his offenses. An established well-understood method of pleading, utilizing, since the advent of the UCMJ, a format patterned on federal civilian practice has been supplanted with insufficient guidance as to what is an acceptable substitute. Uniformity in a matter so basic as pleading thereby has been rendered nonexistent. Additionally, the complications produced by *Green* have never been quieted. Even now, it is unusual for this Court to review a record where the military judge has complied fully with all the rules purportedly mandated in that decision and its companion cases. And in our opinion, the consequences flowing from the legal postulates contained in *Booker* have only commenced. Reconsideration of *Booker* should have included a clarification of the admissibility of nonjudicial punishment and summary court-martial records at subsequent trials. Failure to do this has rendered a disservice to those in the field grappling with the contents of that decision.

essentials of due process and fair treatment."[6]

Accordingly, to insure due process and fair treatment, new rules pertaining to Article 15 and Article 20 proceedings were mandated in *Booker.* Failure to comply with the rules meant that records of such proceedings would be excluded in subsequent trials if offered as evidence of prior misconduct of the accused. The mandate interjects lawyers into summary court-martial and nonjudicial punishment procedures.[7]

It is as a result of the foregoing that the specific issue arose in this case. As noted earlier, at issue is the admission into evidence during presentencing of a record of prior summary court-martial which failed to reflect either that the appellant was ad-vised by independent counsel before consenting to trial by summary court-martial, or that appellant executed a written waiver of his right to refuse a summary court-martial. The record does establish that appellant signed a proper waiver of representation by counsel.

In its original consideration of *United States v. Booker, supra,* the Court of Military Appeals found it necessary to limit summary courts-martial to disciplinary actions concerned with *minor military offenses unknown in the civilian society.* The specific distinction was drawn between the summary court-martial as a *disciplinary hearing* and the special court-martial as a *criminal adversary proceeding.*[8]

The redefinition of the nature of the summary court-martial (and Article 15 pro-

6. A great mission? If the Supreme Court had so significant an objective as this in mind, it surely would have stated its "command" so as to be discernible to others.

7. *Nordstrom* speculated that this mandated procedure served to subvert the fundamental purpose of the otherwise speedy and informal Article 15 proceeding. In short, any member of a military unit, unless attached to or embarked in a Navy ship, can challenge and postpone his commanding officer's authority to exercise disciplinary authority by electing to confer with legal counsel before deciding whether to accept or reject nonjudicial punishment. Nor is any exception provided for combat situations. We also call attention to the rationale contained in footnote 21 of *Booker,* wherein the High Court seized upon the dissent in *Middendorf v. Henry, supra,* arguments before the High Court, and the necessity to protect military "indigents", as a basis upon which to justify its apparent conviction that counsel must be provided at summary courts-martial. The concurring opinion in *Nordstrom* stated: "Not one of these new rules for summary courts-martial and nonjudicial punishment was mandated by the Supreme Court. In fact, they are not even alluded to in *Middendorf v. Henry,* and surely are contrary to the spirit of that decision." 5 M.J. 528 at 535.

8. *Booker* introduces entirely new concepts of legal thought into military law with its redefinition of Article 15 and Article 20 proceedings as disciplinary hearings as distinguished from special and general courts-martial which the High Court identifies as "criminal" proceedings. But, is a person being tried by general court-martial for negligently grounding his ship a criminal? Our point is that the interjection of language symbols and concepts, plucked from the civilian legal sector, into an already fixed, ordered and long-established system of military law, legal writing and discourse, is creating serious misunderstandings and questions affecting the integrity of that system and its ability to continue functioning effectively. Never before has there been such a tremendous gap between the decisions of the Court of Military Appeals and their interpretation by the service appellate courts. Previously, the guidance of the High Court, however objectionable, was respected and by common consent accepted. However, the present Court's irreverent rejection of many military values, as embodied in long-standing terminology, procedures and practices, has caused many to take a more penetrating look at the intentions of the High Court. Moreover, there has been no rationale or basis in fact expressed by the High Court which would demonstrate a newly employed civilian concept of practice to be preferable to its counterpart in military law. In other words, such a changeover is neither necessary nor expedient. Now all of this, if not beyond dispute, is yet so nearly certain that it must be given the most serious consideration by the appellate courts in the fulfillment of their responsibility to ensure the preservation of the integrity of the military justice system. As stated in *Nordstrom,* we have a duty to make discriminating, critical and level-eyed analyses of questionable opinions and to register our objection to them, when warranted, in the decisions we render. And, unless the service appellate courts are self-assertive and act, or are permitted to act, according to their own best judgment, they are not courts in the truest sense of the word.

ceedings) gave rise to various procedural requirements enunciated by the Court of Military Appeals to regulate the interaction between the so-called disciplinary hearings and criminal adversary proceedings.

The Court concluded that the legal ramifications of the decision to choose between disciplinary and criminal forums warranted the advice of a legally trained person. Accordingly, it made mandatory the requirement that an individual be advised of the right to confer with an independent counsel before deciding between disciplinary or criminal forums.

The newly conceived distinction between summary and special courts-martial also brought forth another mandate that a written statement clearly demonstrate any waiver of the right to remove alleged disciplinary offenses from a disciplinary hearing to a criminal proceeding, i. e., refuse nonjudicial punishment and the summary court-martial and elect trial by special court-martial.

To give viability to these requirements and to emphasize the conceptual distinction between these forums, the Court of Military Appeals limited the introduction into evidence of any record of a disciplinary hearing at a criminal adversary proceeding held subsequent to the *Booker* decision. *United States v. Cannon,* 5 M.J. 198 (C.M.A.1978).

This limitation means that failure to render advice concerning the right to consult with independent counsel, before deciding on a disciplinary or criminal adversary proceeding, will render evidence of the disciplinary hearing inadmissible in a subsequent court-martial. Similarly, proffered evidence is inadmissible where there is a failure to establish, in writing or on the record, waiver of the right of removal from a disciplinary proceeding to a criminal proceeding.

In those summary courts-martial where the accused is represented by counsel, or has properly waived counsel, and the mandated advice prior to selection of forum has been satisfied, as well as waiver of trial in a criminal proceeding, evidence of the disciplinary proceeding can be used in aggravation, as characterization of prior service,

and to escalate ("enhance") punishment, by activating the escalator provisions of Section B, paragraph 127c, *Manual for Courts-Martial, United States, 1969* (Revised edition). Where the mandated advice has been provided and the accused waives his right of removal, but representation by counsel is not made available to the accused during the summary court-martial hearing, evidence of the proceeding can be admitted in aggravation, but not to escalate punishment within the authority contained in Section B, paragraph 127c, *Manual for Courts-Martial, United States, 1969* (Revised edition).

The essential basis for much of the *Booker* decision was repudiated when the Court of Military Appeals reconsidered and reinterpreted the nature of summary courts-martial. *United States v. Booker,* 5 M.J. 246 (C.M.A.1978). In reexamining *Booker,* the High Court looked again at *Middendorf v. Henry, supra,* and decided that it did not, after all, project "underlying themes" which "mandated" the limitations imposed by *Booker* on summary courts-martial. Thus, the summary court-martial is reinstated as it existed prior to *Booker,* with its status and nature as expressed in Article 20, UCMJ, reaffirmed.

This Court was openly critical of the *Booker* decision in *Nordstrom* and encouraged reconsideration of *all its holdings.* The reconsideration and partial reversal of *Booker,* however, failed to discuss the limitations on the use of records of summary courts-martial in subsequent special courts-martial, the issue under consideration in the instant case. With regard to this aspect of *Booker,* the difficulties presented by the logic and language of that decision, which we described in *Nordstrom* as neither credible nor communicable, have now been further complicated by the partial reversal. The following is illustrative:

In its original consideration of *Booker,* the Court of Military Appeals proclaimed that summary courts-martial were limited to minor military offenses unknown in civilian society. It also characterized the summary court-martial as a disciplinary hearing. The High Court next set up deline-

**540**

ations segregating this disciplinary hearing, and records of it, from criminal adversary proceedings. But, upon reconsideration of *Booker*, the High Court declared that it is not the nature or function of summary courts-martial to adjudicate only minor military offenses unknown in the civilian society. Accordingly, now that the summary court-martial has been reinstated to the status defined by the UCMJ, we are left with delineations and requirements which are patently defective, logically, and which serve no purpose but to hinder and impede the efficient administration of military discipline. Once again we urge the High Court to overturn all the *Booker* holdings.

 In summary, before the record of appellant's conviction by summary court-martial could be introduced in a subsequent special or general court-martial, *Booker* requires the following: (1) evidence, in writing or established on the record by the trial judge, that the accused was advised of his right to consult with an independent counsel prior to accepting trial by summary court-martial; and (2) evidence, in writing or established on the record by the military judge, of a voluntary, knowing, and intelligent waiver of the statutory right of removal to trial by special or general court-martial. Before a record satisfying these requirements may be used to escalate ("enhance") punishment at a subsequent court-martial in accordance with Section B, paragraph 127c, *Manual for Courts-Martial, United States, 1969* (Revised edition), it must further be shown that the accused was represented by counsel at the summary court-martial, or validly waived such representation. Where the requirements of (1) and (2) are met but counsel is not made available to the accused, a previous conviction can only be used to aggravate the punishment.

The rules set forth above were not complied with in the instant case. Accordingly, while the findings in this case are affirmed, we cannot approve the sentence. The record is forwarded to the Judge Advocate General of the Navy for return to the convening authority, who may order a rehearing on the sentence, or, in the alternative, approve a sentence which does not include a punitive discharge.

Chief Judge CEDARBURG and Judge MICHEL, concur.