UNITED STATES, Appellee,

v.

Bacilio P. SABLAN, Specialist Six U. S. Army, Appellant.

No. 32,021.
CM 432698.

U. S. Court of Military Appeals.

Jan. 8, 1979.

Appearances: For Appellant—*Captain Barry J. Wendt* (argued); *Colonel Alton H. Harvey* (on brief); *Lieutenant Colonel John R. Thornock; Captain John R. Osgood* (on brief).

For Appellee—*Captain Laurence M. Huffman* (argued); *Lieutenant Colonel Donald W. Hansen; Major John T. Sherwood, Jr.* (on brief); *Captain Gary F. Thorne* (on brief).

Opinion of the Court

PERRY, Judge:

The appellant was convicted of rape (2 specifications), attempted rape (4 specifications), and burglary (4 specifications), in violation of Articles 80, 120 and 129, Uniform Code of Military Justice, 10 U.S.C. §§ 880, 920 and 929 respectively. He was sentenced to a dishonorable discharge, forfeiture of all pay and allowances, reduction to the lowest enlisted grade and imprisonment for 36 years. The United States Army Court of Military Review affirmed. We granted review to consider the appellant's contention that the prosecuting attorney propounded an improper question to a witness for the Government and thereby placed before the panel members an inadmissible and highly prejudicial fact, with the consequence that he was denied a fair trial.

I.

The record discloses that during a 3-month period which commenced March 9, 1974, to about June 14, 1974, several house burglaries were committed at Fort Bragg, North Carolina, during which five young girls ranging from 8 to 15 years of age were sexually assaulted. One of the victims was raped twice within a 1-month period by the intruder. Following an intensive investigation which was conducted by members of the Crimes Against Persons Team at Fort Bragg, the appellant was arrested and charged with the several offenses of which he stands convicted. Both before and dur-

ing the trial, all five girls positively identified the appellant as the man who assaulted them. Within moments of one of the alleged attempted rapes, the appellant was observed by the father of the victim in the vicinity of his residence where the offense had been committed. Other evidence presented during the trial tended to support the Government's theory that the appellant was the perpetrator of the offenses.

During the trial, Agent Hawkins of the Crimes Against Persons Team, while testifying as a witness for the Government, was asked by the prosecuting attorney whether the appellant had been placed in pretrial confinement at the time of his arrest on June 19, 1974. The appellant's attorney promptly objected on the ground that the question was not relevant. The military judge overruled the objection and Agent Hawkins was permitted to testify that the appellant had indeed been confined from June 19, 1974, until the trial and that he was still in custody. Thereupon, the prosecuting attorney asked Agent Hawkins whether his team had been requested to investigate any more rapes or burglaries since June 18, the day before the appellant was taken into custody. A defense objection to that question was promptly sustained by the military judge. Upon resumption of the trial the following morning, the appellant's attorney moved for a mistrial on the ground that the questions propounded to Agent Hawkins were improper and highly prejudicial. The military judge declined to grant a mistrial, stating that he doubted that the panel members placed any significance on the question. He informed counsel that he would, however, admonish the panel that they were not to draw any inferences from the fact that the appellant had been confined. Later, while instructing the panel members on the law of the case, the judge instructed them that they "must not draw any inference of guilt from the fact that the accused has been confined awaiting trial."

## II.

Review of the record of trial, the briefs and the arguments of the parties reveal two salient propositions which we must review and balance against each other. First, the Government presented massive evidence which the court panel apparently believed and which tended to support the Government's theory that the appellant committed the various offenses of which he stands convicted. Second, the Government introduced or sought to introduce through Agent Hawkins' testimony an inadmissible fact which threatened to deprive the appellant of the fair trial to which he was entitled.

The massive evidence which tends to support the verdict of guilty has been mentioned in Part I above and need not be reviewed here. It will suffice to merely reiterate that it overwhelmingly supported the verdict of the panel.

■ We proceed then to consider the potential for harm embodied in the question which the prosecutor propounded to Agent Hawkins. Asking a witness whether any rapes occurred or were committed after June 18 undoubtedly made the panel members aware of the fact that after appellant's arrest no other rapes occurred. This is improper. Standing alone, it created an impermissible inference that the appellant was the perpetrator of the offenses since no other such offenses were committed after the appellant was taken into custody. Such a presumption unfairly benefits the Government. An accused, faced with the presentation of such evidence, would be unable to rebut the inference of guilt and would, by his inability, become an irrefutable witness against himself. In a case in which the evidence of guilt is less pervasive than this one, such a presumption might serve to tilt the scales in favor of a verdict of guilty, whereas without the presumption, a fair-minded jury might acquit. It matters not that the question was not answered. The damage is done when the information is in any way communicated to the jury. It invaded the right of the appellant not to be convicted of crime except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he was charged. *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); *Mulla-*

*ney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975); *United States v. Verdi,* 5 M.J. 330 (C.M.A.1978).

■ But as we have noted above, the evidence against the appellant was both overwhelming and convincing. In assessing the impact of the prosecution's conduct upon the court panel's deliberations, we have considered whether there is a "reasonable possibility" that the conduct of the prosecutor in asking the question "might have contributed to the conviction." *Fahy v. Connecticut,* 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963). Upon consideration of all the facts and circumstances under which the question was asked, we conclude that the question must be answered in the negative. While we do not hesitate in finding that the prosecutor introduced an impermissible fact into the trial, the error, which, we feel, was committed by the military judge, was in first permitting the question to be asked. However, under all the circumstances, we conclude that the error was harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *United States v. Ward,* 1 M.J. 176 (C.M.A.1975).

The decision of the United States Army Court of Military Review is affirmed.

Chief Judge FLETCHER concurs.

COOK, Judge (concurring in the result):

I concur in the result. I do not agree that a question as to whether the witness' "section [had] investigated any rapes since the 18th of June," the day before the accused was taken into custody, can be transformed into a question indicating, as the principal opinion phrases it, "the *fact* that after appellant's arrest no other rapes occurred." (Emphasis added.)