### UNITED STATES

v.

**Lorraine C. VANDERLIP, 250 53 5131, Seaman (E-3), U.S. Navy.**

**NMCM 88 2875C.**

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 16 March 1988.

Decided 30 June 1989.

---

2. *See* R.C.M. 1001(f)(2), MCM, 1984.

Lt. Jeffrey S. Horwitz, JAGC, USNR, Appellate Defense Counsel.

Maj. Laura L. Scudder, USMC, Appellate Government Counsel.

Before COUGHLIN, STRICKLAND and RUBENS, JJ.

RUBENS, Judge:

Contrary to her pleas, a general court-martial composed of officer members convicted appellant of soliciting another to commit the murder of her husband in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934. The members sentenced appellant to a bad-conduct discharge and confinement for 18 months. The convening authority approved the adjudged sentence, but suspended confinement in excess of 15 months.

We have examined the record of trial and the briefs of counsel and heard oral argument. We issued an opinion in this case on 12 May 1989. However, we granted appellant's 16 May 1989 motion for reconsideration on 19 May 1989. Upon reconsideration, we withdraw our opinion of 12 May 1989 and substitute this opinion in its place.

Appellant has raised three assignments of error:

I

THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT BY FAILING TO INSTRUCT THE MEMBERS OF THE POTENTIAL DEFENSE OF ENTRAPMENT.

II

THE MILITARY JUDGE IMPROPERLY INTERRUPTED THE DEFENSE COUNSEL'S CLOSING ARGUMENT AND ERRONEOUSLY PROHIBITED A RECONSIDERATION ON FINDINGS.

III

THE MILITARY JUDGE ERRED IN EXCLUDING EVIDENCE OF APPELLANT'S PARTIAL MENTAL RESPONSIBILITY FROM THE MEMBERS.

I

Appellant's first assignment of error is essentially that the military judge failed to *sua sponte* instruct on the defense of entrapment. The trial defense counsel indicated early in the trial that she intended to raise the defenses of duress and entrapment, but appears to have reconsidered this position and abandoned the defense of entrapment by the end of the defense case on the merits. During the Article 39(a), UCMJ, session devoted to instructions, the trial counsel requested, *inter alia*, the duress instruction but did not request the entrapment instruction. The defense counsel informed the military judge that she "was not looking for entrapment either." R. 262–263. Consistent with this tactical decision, the defense counsel twice declined opportunities to request the entrapment instruction. First, she did not object to the

military judge's failure to give the entrapment instruction before the members closed to deliberate on findings. (The Government argues that this constitutes waiver, citing Rule for Courts–Martial (R.C.M.) 920(f), Manual for Courts–Martial (MCM), United States, 1984.) Second, the members asked about entrapment during their deliberations. The defense counsel did not object to the military judge's instruction that entrapment was not raised by the evidence. Clearly, the defense counsel believed the defense of entrapment was not raised.

The court-martial convicted appellant of soliciting an undercover Naval Investigative Service (NIS) agent to murder her husband, a third class petty officer. The thrust of her defense was that she had an extreme fear of firearms as a result of traumatic childhood incidents and that the NIS agent coerced her into soliciting this crime by brandishing his .357 Magnum. Accordingly, the defense requested and received the instruction on duress. The defense of entrapment states that "the criminal design or suggestion to commit the offense originated in the Government and the accused had no predisposition to commit the offense." R.C.M. 916(g), MCM, 1984. We find no evidence of record that the criminal design or suggestion to commit this crime of solicitation originated with the Government. Rather, the evidence is compelling that the idea originated with the appellant together with her friends. Accordingly, the defense of entrapment was not reasonably raised by the evidence and need not have been instructed on. The first assignment of error is without merit.

## II

 Appellant's second assignment of error is two-fold: first, that the military judge improperly interrupted the defense counsel's closing argument; and second, that the military judge erroneously prohibited the members from reconsidering their findings. This alleged error arose when defense counsel stated during her argument on sentence that evidence presented during sentencing is "significant in deter-mining whether you should reconsider your findings of guilty and what the appropriate sentence should be in this case." R. 304. The trial counsel did not object to this argument. However, the military judge interrupted the defense counsel and stated "counsel, you may not argue for that, that's inappropriate argument. This case has concluded on the merits and entitlement [sic] that the members have the members may exercise, but you may not reargue the merits of the case on extenuation and mitigation." Id. The military judge's comment was short, apparently neutral in language and tone, and correct in law.

Although the members may reconsider findings at any time prior to the announcement of sentence, R.C.M. 924, MCM, 1984, the defense counsel may not argue for reconsideration during the sentencing phase of the court-martial and, in effect, relitigate the findings. R.C.M. 1001(g), MCM, 1984; United States v. Teeter, 16 M.J. 68, 72, 73 (C.M.A.1983); United States v. Tobita, 3 U.S.C.M.A. 267, 12 C.M.R. 23 (1953). The military judge instructed the members that they may reconsider their findings at any time before sentence is announced and, if they wished to do so, to request specific instructions. R. 289. The members made no such request. Accordingly, we find that the military judge properly halted an improper argument for reconsideration but did not preclude the members from reconsidering the findings on their own volition. The second assignment of error is without merit.

## III

Appellant's third assignment of error is that the military judge erred in excluding evidence of appellant's partial mental responsibility. Prior to pleas the Government made a motion in limine to exclude the testimony on the merits of Dr. John Petrich, a psychiatrist, because he would provide evidence of partial mental responsibility which was inadmissible under R.C.M. 916(k)(2), MCM, 1984. Dr. Petrich would have testified that although appellant was not mentally ill at the time of the alleged offense, her mental condition made her less

able to function rationally than the average person when confronted by a man with a pistol. Annex A to Appellate Exhibit VI. The trial defense counsel responded that this evidence was not going to be offered to prove partial mental responsibility, but rather as evidence of appellant's state of mind and as evidence relating to the defense of entrapment. The military judge granted the motion, holding that the evidence did not constitute a defense and was barred by R.C.M. 916(k)(2), MCM, 1984. The Government disputes appellant's contention and further argues that appellant suffered no material prejudice even if error occurred.

■ We find that the military judge's ruling on the motion *in limine* was error. In *Ellis v. Jacob,* 26 M.J. 90 (C.M.A.1988), the Court of Military Appeals held that R.C.M. 916(k)(2), MCM, 1984, was a nullity because the President's rule-making authority does not extend to matters of substantive military criminal law and because it unconstitutionally precluded an accused from presenting evidence negating the *mens rea* element (i.e., intent,). This would, moreover, be contrary to the purpose of Congress in enacting Article 50a(a), UCMJ, 10 U.S.C. § 850a(a). The military judge's ruling in the case *sub judice,* therefore, erroneously denied appellant the opportunity to present evidence that she did not have the specific intent that the crime solicited (murder of her husband) actually be committed. This is error of constitutional dimensions. *Rock v. Arkansas,* 483 U.S. 44, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987); *Crane v. Kentucky,* 476 U.S. 683, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986); *Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973); *Washington v. Texas,* 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967); *Ellis v. Jacob,* at 97.

■ Before a constitutional error can be held harmless, this Court must be able to declare a belief that it was harmless beyond a reasonable doubt. *United States v. Ward,* 1 M.J. 176, 180 (C.M.A.1975), citing *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The government has the burden of meeting this standard; appellant need not prove specific prejudice. *United States v. Moore,* 1 M.J. 390, 392 (C.M.A.1976). The Court of Military Appeals has consistently applied this harmless beyond a reasonable doubt standard since *Ward. See, e.g., United States v. Applewhite,* 23 M.J. 196, 199–200 (C.M.A.1987); *United States v. Richardson,* 15 M.J. 41, 48 (C.M.A.1983); *United States v. Dowell,* 10 M.J. 36, 46 (C.M.A.1980); *United States v. Sablan,* 6 M.J. 141, 143 (C.M.A.1979); and *United States v. Pringle,* 3 M.J. 308 (C.M.A.1977).

■ In assessing appellant's third allegation of error, it is necessary to determine whether the record affirmatively demonstrates that the error was harmless beyond a reasonable doubt. Although the excluded evidence related to the important element of specific intent, the trial defense counsel nonetheless presented substantial evidence relating to appellant's *mens rea.* Appellant testified at length about her father's abuse of their family during her childhood by threatening them at gunpoint, forever traumatizing her. This testimony was corroborated by her mother. The trial defense counsel made extensive reference to this childhood trauma during argument on findings. Although the military judge's ruling denied appellant an expert imprimatur on her argument, the members nonetheless heard extensive evidence on this question. However, the entire argument with respect to intent was premised on the fact that the NIS undercover agent pointed his handgun at appellant. The record does not support this conclusion. Rather, we find that the NIS undercover agent merely showed appellant his weapon to establish his credentials as an "assassin" and that he did not threaten her with it.

Finally, the government's case against appellant was overwhelming. The evidence conclusively demonstrates that appellant, together with her friends, instituted a search for a hired killer. The government produced a handwritten contract for the killing signed by the appellant and an audio recording of the undercover agent's second conversation with appellant. Moreover, ap-

pellant's behavior at all times indicated that she took the solicitation seriously and not as a joke, and that at least initially, she freely wanted her husband to be murdered. Her claim that she was acting under duress during the first meeting with the apparent gunman loses credibility in view of her failure to notify police or even inform her live-in boyfriend of the supposedly traumatic event upon the departure of the gunman, which would have ended any alleged duress. We find that the record affirmatively demonstrates that the error was harmless beyond a reasonable doubt. The third allegation of error is without merit.

Accordingly, the findings and sentence as approved on review below are affirmed.

Senior Judge COUGHLIN and Judge STRICKLAND concur.